PEOPLE v HICKS

PEOPLE v BELLEW

Docket Nos. 97552, 98753. Argued October 5, 1994 (Calendar Nos.
6-7). Decided December 30, 1994. Certiorari denied in *Hicks* by
the Supreme Court of the United States on June 5, 1995, 515
US — (1995).

Tyrone Hicks was charged in the Detroit Recorder's Court with
assault with intent to murder and possession of a firearm
during the commission of a felony. During a bench trial before
Judge Daphne Curtis, after three witnesses had testified, the
prosecutor discovered that the defendant's brother had been
the judge's campaign manager. Thereafter, Judge Curtis re-
cused herself without expressly declaring a mistrial. The case
was assigned to Terrance Boyle, J., who offered the defendant
the option of continuing the trial. After the defendant refused
the offer, Judge Boyle declared a mistrial, but denied the
defendant's motion to dismiss on double jeopardy grounds,
reasoning that Judge Curtis' recusal was the functional equiva-
lent of a mistrial based on manifest necessity. The Court of
Appeals, FITZGERALD, P.J., and MICHAEL J. KELLY, J. (J. T.
HAMMOND, J., dissenting), reversed, dismissing the case, and
concluding that there was no manifest necessity to declare a
mistrial (Docket No. 149026). The people appeal.

Rodney Bellew was charged in the Detroit Recorder's Court with
receiving and concealing stolen property in excess of $100. A
bench trial before Judge Daphne Curtis was continued after
two witnesses had testified. In the interim, the prosecutor
moved to disqualify the judge, alleging that the defense attor-
ney was associated in the practice of law with Judge Curtis'
spouse. The judge recused herself over the objection of defense
counsel and a defense request for an evidentiary hearing.
Thereafter, Chief Judge Dalton Roberson declared a mistrial
and granted the defendant's motion to dismiss, holding that
retrial was barred by the Double Jeopardy Clause. The Court of
Appeals, JANSEN, P.J., and WHITE and K. N. HANSEN, JJ.,
affirmed in an unpublished opinion per curiam (Docket No.
157434). The people appeal.

In separate opinions, the Supreme Court reversed the deci-

sion of the Court of Appeals in *Hicks* and remanded the case for retrial, and affirmed the decision of the Court of Appeals in *Bellew*.

Justice GRIFFIN, joined by Justice MALLETT, stated that Judge Curtis' recusal and refusal to continue in these cases is analogous to a midtrial disability suffered by the presiding judge. The determination whether manifest necessity existed to justify a mistrial necessarily depends on whether a scrupulous exercise of discretion by the successor would have revealed reasonable alternatives to declaring a mistrial. In *Hicks,* because Judge Boyle properly considered available alternatives to declaring a mistrial, the defendant's justified refusal of the proffered alternatives constituted manifest necessity for the mistrial, and he should be retried, consistent with double jeopardy protections. In *Bellew,* retrial should be barred by the Double Jeopardy Clause.

In a bench trial, jeopardy attaches once the court begins to hear evidence. Retrial is not barred when a defendant moves for or consents to a mistrial and the consent was not precipitated by prosecutorial or judicial goading. In addition, retrial is permitted when a mistrial was occasioned by manifest necessity. Determining whether manifest necessity exists to justify a mistrial requires a balancing of the defendant's interest in completing the trial in a single proceeding before a particular tribunal with the strength of the justification for a mistrial. Trial judges must not declare a mistrial until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. Each case necessarily depends on its particular facts, with any doubts resolved in favor of the defendant.

In these cases, jeopardy had attached, and, thus, retrial would be barred unless the defendants consented or manifest necessity justified declaration of a mistrial. Neither defendant consented to a mistrial. Judge Curtis' midtrial recusal and refusal to further participate presented a situation not unlike that created by the midtrial disability of a trial judge.

In *Hicks,* Judge Boyle offered to preside over the completion of the defendant's trial or to declare a mistrial. While the option to complete the trial was designed to protect the defendant's interest in terminating the proceedings, once begun, it could not restore his right to have his trial completed by a particular tribunal. Once he rejected the option, Judge Boyle had no choice but to declare a mistrial. Under these circumstances, retrial will not contravene the protections afforded by the Double Jeopardy Clause.

In *Bellew,* the chief judge did not engage in a scrupulous

exercise of discretion. While it is arguable that no reasonable alternative existed and it was probable that the defendant would have refused any alternative offered, such speculation cannot support a conclusion that manifest necessity existed. Because options existed and remained unexplored, manifest necessity did not exist to justify the mistrial.

Justice BRICKLEY concurred only in the result.

Chief Justice CAVANAGH, joined by Justice LEVIN, concurring in part and dissenting in part, stated that a reasonable alternative to mistrial existed, i.e., a hearing regarding whether recusal was required, and that the cause of the mistrial was not outside the control of the prosecutor in *Hicks* and the trial judge in *Bellew.*

Double jeopardy protections require balancing a defendant's interest in having guilt or innocence decided in one proceeding against society's interest in affording the prosecutor full and fair opportunity to present evidence. Retrial may be had where an innocent error outside the prosecutor's or judge's control results in a mistrial or where a mistrial results from manifest necessity. Where the mistrial is not manifestly necessary, double jeopardy bars retrial. Before a trial judge, sua sponte, declares a mistrial, explicit findings should be made, after a hearing on the record, that no reasonable alternative exists.

In these cases, the real cause of each trial's termination was the trial judge's recusal without justification, and the cause was within the control of the prosecutor or the trial judge.

Justice RILEY, concurring in part and dissenting in part, stated that in *Hicks,* the defendant did not consent to a mistrial. Because there existed a manifest necessity to declare a mistrial, retrial of the defendant does not violate the Double Jeopardy Clause.

Justice BOYLE, joined by Justice RILEY, dissenting, stated that in *Bellew,* the defendant's request for the mistrial lifted the bar to double jeopardy because his request was not intentionally provoked by the prosecution. Because the mistrial was declared at his request, the state need not justify the declaration. The manifest-necessity strand of double jeopardy analysis applies where a mistrial is granted over the defendant's objection. Because counsel resisted any alternative, the chief judge had no other choice but to grant a mistrial.

To require a judge to explore alternatives available to a defendant may be appropriate where the cause of a mistrial is subject to manipulation by the prosecutor, and the defendant asserts feasible alternatives to a mistrial. However, where the trial has begun and the cause of the mistrial is not one that the

prosecutor has manipulated to avoid an acquittal, the defendant's interest in completing the proceedings is subordinate to the public interest in affording the prosecution one full and fair opportunity to present the evidence to an impartial factfinder. Where the situation triggering mistrial is potential bias of the factfinder, the trial court's exercise of discretion in declaring a mistrial is entitled to the highest deference.

Justice BOYLE took no part in the decision of *Hicks.*

*Hicks,* reversed and remanded.

*Bellew,* affirmed.

201 Mich App 197; 506 NW2d 269 (1993) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, *Karen M. Woodside,* Assistant Prosecuting Attorney, for the people.

*Henry M. Scharg* for defendant Hicks.

*Walter Pookrum* for defendant Bellew.

GRIFFIN, J. We are required in each of these consolidated appeals to determine whether the constitutional bar against double jeopardy precludes retrial after a judge has recused herself in the middle of a bench trial and the successor judge has declared a mistrial. Our answer turns on the scope of the manifest-necessity exception to the double jeopardy bar and its application to the particular facts presented. We conclude that the Double Jeopardy Clause allows retrial of defendant Hicks, but precludes retrial of defendant Bellew. Accordingly, we would reverse the Court of Appeals decision in *People v Hicks,*[1] and we would affirm its decision in *People v Bellew.*[2]

[1] 201 Mich App 197; 506 NW2d 269 (1993).

[2] Unpublished opinion of the Court of Appeals, issued January 7, 1994 (Docket No. 157434).

I

Both cases arise out of bench trials presided over by Judge Daphne Curtis of the Detroit Recorder's Court, and involve her failure before trial to disclose a relationship with one of the parties. In each case, the prosecutor learned of the relationship and directed the court's attention to this information after several witnesses had testified. A midtrial dilemma ensued when the judge abruptly recused herself and refused to participate further in either trial.

### A. *PEOPLE v HICKS*

Defendant Hicks was charged with assault with intent to murder[3] and possession of a firearm during the commission of a felony[4] in a bench trial that commenced on September 9, 1991. During the lunch recess, after three witnesses had testified, the assistant prosecutor discovered that defendant's brother was Gregory Hicks, a friend of Judge Curtis who had served as her campaign manager when she was elected to judicial office. After the lunch recess, the assistant prosecutor brought this fact to the attention of Judge Curtis. She admitted that a person named Gregory Hicks had been her campaign manager and friend for the last ten years, and then she invited the parties to comment on their respective positions.

Defense counsel argued against the judge's recusal, indicating that Gregory Hicks would not be a witness in the case. The assistant prosecutor declined to comment. Judge Curtis then recused herself.

Shortly thereafter the parties appeared before

[3] MCL 750.83; MSA 28.278.
[4] MCL 750.227b; MSA 28.424(2).

Judge Terrance Boyle.[5] He offered to continue the trial before him, but defendant rejected this proposal. Judge Boyle then entered a mistrial "as an official thing to clean up what happened there," and he denied defendant's motion to dismiss the case on double jeopardy grounds, reasoning that Judge Curtis' recusal after acknowledging that she might be affected by her knowledge of the questioned relationship was the functional equivalent of a mistrial prompted by manifest necessity.

A divided panel of the Court of Appeals reversed and dismissed the case, concluding that "manifest necessity [did not exist to warrant] a mistrial over defendant's objection and the state is barred from placing defendant in jeopardy a second time on these charges." 201 Mich App 197, 203-204; 506 NW2d 269 (1993).

In a vigorous dissenting opinion, Judge HAMMOND posited that if Judge Curtis had dropped dead, fallen ill, or become disabled during the course of the trial, no one would dispute that manifest necessity justified a mistrial. He deemed the situation resulting from Judge Curtis' recusal analogous to " 'a breakdown in judicial machinery such as happens when the judge is stricken, or a juror has been discovered to be disqualified to sit . . . .' " *Gori v United States,* 367 US 364, 372; 81 S Ct 1523; 6 L Ed 2d 901 (1961) (Douglas, J., dissenting). *Id.* at 206.

We granted the prosecutor's application for leave to appeal. 445 Mich 862 (1994).

### B. *PEOPLE v BELLEW*

A retrial of defendant Bellew on a felony charge of receiving and concealing stolen property in

---

[5] Judge Curtis had telephoned Judge Evans, the acting chief judge, and informed him of her recusal. Judge Evans assigned the case to Judge Boyle, the alternate for Judge Curtis.

excess of $100[6] commenced on June 9, 1992.[7] After two witnesses had testified, the trial was continued until June 23, 1992.

During the interim, the prosecutor filed a motion to disqualify Judge Curtis, alleging that the defense attorney was "in some way associated in the practice of law" with Judge Curtis' spouse. The motion focused on Judge Curtis' ethical obligation to disclose this alleged relationship, and her failure to do so. Defense counsel answered by challenging the grounds for disqualification and requesting Judge Curtis to deny the motion or hold an evidentiary hearing. Counsel argued that "[w]hether that relationship would provide a basis under these circumstances for this Court to recuse itself on the vague generalization is unsubstantiated," and that in light of the "substantial constitutional interests" involved, it was "an outrage" for the prosecution to file this motion. Stating that she had not engaged in any misconduct, Judge Curtis nonetheless recused herself to insure that both sides felt "their rights are protected and that impartiality is assured . . . ." She declined to address defendant's request for an evidentiary hearing, choosing instead to refer the matter to Chief Judge Dalton Roberson.

The chief judge declared a mistrial, and then granted defendant's motion to dismiss, holding that retrial was barred by the Double Jeopardy Clause.

---

[6] MCL 750.535; MSA 28.803.

[7] In his initial trial before the same Judge Curtis in September 1991, defendant had been convicted of one count of receiving and concealing stolen property in excess of $100, a felony, and four counts of concealing or misrepresenting the identity of a motor vehicle without intent to mislead, a misdemeanor. Following his conviction, defendant retained new counsel and moved for a new trial, alleging ineffective assistance of counsel. Judge Curtis granted the motion with respect to the felony conviction. Actions that transpired at the retrial are the subject of this appeal.

A unanimous panel of the Court of Appeals upheld the chief judge's decision, concluding that, while manifest necessity is an elusive concept, with considerable deference being accorded a trial court's application of this concept, such deference could not operate to cloak the mere appearance of impropriety under the umbrella of manifest necessity.[8] Unpublished opinion per curiam, issued January 7, 1994 (Docket No. 157434).

We granted the prosecutor's application for leave to appeal, and ordered that this case be argued and submitted with *People v Hicks.*[9]

II

Under both the Michigan[10] and the federal[11] constitutions, an accused cannot be placed in jeopardy twice for the same offense.[12] Jeopardy attaches "once the defendant is put to trial before the trier of fact, whether [it] be a jury or a judge." *United States v Jorn,* 400 US 470, 479; 91 S Ct 547; 27 L Ed 2d 543 (1971). In a bench trial, jeopardy attaches once the court begins to hear

[8] The Court distinguished between Judge Roberson's granting of the mistrial and his dismissal of the charges on double jeopardy grounds, holding that the prosecutor had appealed only the latter, not the former. Consequently, the Court of Appeals did not address whether Judge Roberson should have or could have sent the case back to Judge Curtis.

[9] 445 Mich 862 (1994).

[10] Const 1963, art 1, § 15.

[11] US Const, Am V, applicable to the states through the Fourteenth Amendment. *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

[12] It has often been said that the double jeopardy guarantee consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

evidence. *Serfass v United States,* 420 US 377, 388; 95 S Ct 1055; 43 L Ed 2d 265 (1975).[13]

An oft-repeated statement of the reasons justifying this protection is set forth in *Green v United States,* 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957), where the Court said:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Despite the concern for repeated prosecutions, it is axiomatic that retrial is not automatically barred whenever circumstances compel the discharge of a factfinder before a verdict has been rendered.

One exception to the double jeopardy bar arises when a defendant moves for or consents to a mistrial. In *United States v Dinitz,* 424 US 600, 607; 96 S Ct 1075; 47 L Ed 2d 267 (1976), the Supreme Court held that

> "where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."[14]

[13] In a jury trial, jeopardy attaches once the jury is impaneled and sworn. *Id.* at 388.

[14] In *United States v Dinitz, supra,* the defendant's attorney was expelled for misconduct, and the trial judge offered three options to the defendant: proceed with co-counsel, take a continuance to appeal

Consequently, retrial is not barred whenever a defendant has consented to a mistrial and the consent was not precipitated by prosecutorial or judicial goading.[15]

In addition to the consent exception, the Supreme Court has consistently maintained that retrial is permitted when the mistrial was occasioned by manifest necessity. The classic formulation of the test to be applied in determining whether retrial is permissible was articulated by Justice Story in *United States v Perez,* 22 US (9 Wheat) 579, 580; 6 L Ed 165 (1824):

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . .

The impetus behind this rule was the recognition that even personal security and freedom from

the expulsion of his attorney of choice, or have a mistrial declared. The defendant opted for the mistrial, then later argued that retrial was barred on double jeopardy grounds. The Supreme Court disagreed, holding that defendant had consented to the mistrial.

[15] See *Oregon v Kennedy,* 456 US 667, 676; 102 S Ct 2083; 72 L Ed 2d 416 (1982) (the Double Jeopardy Clause bars retrial when the prosecutor intended to provoke the defendant into requesting a mistrial, or when the prosecutor intends "to subvert the protections afforded by the Double Jeopardy Clause"); *People v Dawson,* 431 Mich 234, 253; 427 NW2d 886 (1988) ("Where a defendant's motion for mistrial is prompted by intentional prosecutorial conduct, however, the defendant may not, by moving for a mistrial, have waived double jeopardy protection").

governmental harassment should not be purchased at the high cost of barring *all* retrials following a mistrial declared without the defendant's consent. *Jorn, supra* at 480. The Supreme Court has stated:

> [A] defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments. [*Wade v Hunter,* 336 US 684, 689; 69 S Ct 834; 93 L Ed 974 (1949).]

Determining whether manifest necessity exists to justify the declaration of a mistrial requires a balancing of competing concerns: the defendant's interest in completing his trial in a single proceeding before a particular tribunal versus the strength of the justification for a mistrial. Recognizing the tension between these two concerns, the Supreme Court has held that the *Perez* doctrine commands trial judges to refrain from declaring a mistrial until "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Jorn, supra* at 485.[16] Each case necessarily depends on its own particular facts. *Illinois v Somerville,* 410 US 458, 464; 93 S Ct 1066; 35 L Ed 2d 425 (1973).

---

[16] In *United States v Jorn,* the defendant was charged with wilfully assisting in the preparation of fraudulent tax returns.

At trial, the prosecution attempted to elicit testimony from a taxpayer who had allegedly aided the defendant in the preparation of his return. Defense counsel suggested that the witness be informed of his constitutional rights, and the judge complied. Despite the witness' willingness to testify, the judge prohibited such testimony before the witness had consulted an attorney, and then aborted the trial to enable the witness to obtain such consultation.

On a pretrial motion before retrial, the judge dismissed the information on the basis of former jeopardy. In a plurality opinion, the Supreme Court upheld this dismissal, concluding that manifest necessity did not exist to justify the mistrial, since a continuance would have enabled the witness to seek legal counsel.

Despite the command to decide each case on its own facts, the Supreme Court in *Somerville* concluded it was possible to distill some general rules from individual cases, premised on the "public justice" prong articulated in *Perez*. The *Somerville* Court had determined there was manifest necessity for a mistrial where under local law, a defect in the indictment neither could be cured by amendment nor waived by the defendant. The Court held that a trial judge properly exercises discretion to declare a mistrial when an impartial verdict cannot be obtained, or when a guilty verdict could be returned but would be reversed on appeal because of an obvious procedural error occurring during the trial. Any doubts concerning the existence of manifest necessity should be resolved in favor of the defendant. *Downum v United States,* 372 US 734, 738; 83 S Ct 1033; 10 L Ed 2d 100 (1963). With these considerations in mind, we turn to the cases at bar.

III

As a preliminary matter, we note that in both the cases at bar, Judge Curtis' recusal occurred after several witnesses had testified. Jeopardy had thus attached.[17] Consequently, retrial would be barred in either case in the absence of consent by the defendant or manifest necessity justifying the mistrial.

A

We cannot conclude that the defendant in either case consented to the mistrial. Both defendants

---

[17] *Serfass v United States, supra* at 388 (in a bench trial, jeopardy attaches once the court begins to hear evidence).

adamantly opposed Judge Curtis' decision to re-
cuse herself and expressed their desire to continue
with the chosen factfinder. Accordingly, consent
cannot be derived from defendants' actions sur-
rounding Judge Curtis' recusal.

Moreover, we decline to extract consent from
defendant Hicks' justifiable refusal to accept the
alternatives proffered by Judge Boyle[18] or from a
motion by defendant Bellew for declaration of
mistrial[19] and to dismiss. We note that the hall-
mark of consent is the defendant's retention of
primary control over the course of his trial. *Dinitz,
supra* at 609. The consent *Dinitz* envisioned mani-
fests itself in a defendant's decision to forgo taking
his case " 'to the first jury and, perhaps, end the
dispute then and there with an acquittal.' " *Dinitz,
supra* at 608, quoting *United States v Jorn, supra*

---

[18] The alternatives included a continuation of the trial before Judge
Boyle, with Judge Boyle either reading the earlier transcripts, or
recalling the witnesses, plus the option of having a mistrial declared.

[19] Defendant's motion, presented to Chief Judge Roberson, read in
part as follows:

18. Defendant respectfully maintains that your honor is
without jurisdiction in this matter, there having not been a
mistrial declared.

19. Assuming *arguendo,* the absence of a jurisdictional issue,
this matter should be dismissed on double jeopardy or related
grounds.

20. Actually, defendant requests that the case be sent back to
Judge Curtis for the declaration of a mistrial and then re-
assigned to another judge or to the Chief Judge for sentencing.

21. The record in this matter does not support the grant of
the prosecutor's motion for disqualification. In fact, it barely
supports the request for a hearing into the matter, which is
what the prosecutor should have sought.

22. In granting the prosecutor's motion, the judge effectively
declared a mistrial. Therefore, Count 1 should be dismissed and
retrial barred because there was no manifest necessity for the
mistrial.

Wherefore, for the foregoing reasons, defendant requests that
a mistrial be declared on this count and that retrial [be] barred
on double jeopardy grounds.

at 484.[20] A careful reading of the record, however, compels the conclusion that neither defendant opted to forgo a ruling by Judge Curtis on his guilt or innocence.[21] In fact, both defendants opposed her recusal. In this sense, Judge Curtis' recusal did not comport with the expressed desires of either defendant.[22] Because Judge Curtis' recusal extinguished defendants' option to "go to the first jury," we cannot conclude that either of the defendants consented to a mistrial.[23]

---

[20] The *Dinitz* Court observed:

Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire "to go to the first jury and, perhaps, end the dispute then and there with an acquittal." *United States v Jorn, supra* at 484. Our prior decisions recognize the defendant's right to pursue this course in the absence of circumstances of manifest necessity requiring a sua sponte judicial declaration of mistrial. But it is evident that when judicial or prosecutorial error seriously prejudices a defendant, *he may have little interest in completing the trial and obtaining a verdict from the first jury.* [*Id.* at 608. Emphasis added.]

[21] We think it pertinent to note that during oral argument before this Court, even the prosecutor disavowed any reliance on consent.

[22] Unlike other trial errors, a judge's decision sua sponte to recuse herself after jeopardy has attached in a bench trial deprives a defendant of the option to obtain a verdict from the first factfinder. Despite the dissent's characterization of this sentence as "constitutionally irrelevant," we believe it becomes irrelevant only when viewed within the context of the dissent's erroneous assumption that the protections of the Double Jeopardy Clause do not encompass defendant's right to obtain a verdict from the first factfinder. While such a right is not absolute, it is entitled to constitutional protection under *Wade, supra* at 689, and *Arizona v Washington,* 434 US 497, 509; 98 S Ct 824; 54 L Ed 2d 717 (1978).

Without citing any authority, the dissent asserts that "[i]t appears that a defendant's valued right to a particular tribunal is merely an incident of the defendant's more generalized interest in being able to complete the trial itself." *Post* at 863. As discussed above, however, this conflicts with language in *Wade, supra* at 689, *Washington, supra* at 509, and the plurality opinion in *Jorn.*

[23] We note, however, that a different result would obtain, at least with respect to defendant Hicks, were we to conclude that defendant's protected double jeopardy interest encompassed only the right to a completed trial, and not a completed trial *before a particular tribu-*

Moreover, in *Bellew,* we believe it would be patently unfair to construe defendant's motion for declaration of mistrial and for dismissal as consent to the mistrial, in light of defendant's vigorous

*nal.* See Westen & Drubel, *Toward a general theory of double jeopardy,* 1978 Sup Ct R 81, 84.

Westen and Drubel have suggested that the Double Jeopardy Clause serves an interest in finality that is not inextricably bound to any particular tribunal. More specifically, the authors assert:

> A defendant has a valued right to have his trial completed by a particular tribunal, not because he has a constitutional interest in the identity of any particular tribunal, but because he has an interest in being able "to conclude his confrontation with society" once it has begun . . . . To that extent, the defendant's interest in retaining the particular tribunal with which he began is merely an incident of his primary interest in being able to complete the trial itself. [*Id.* at 90.]

The authors' theory, however, cannot be reconciled with the language in the plurality opinion in *Jorn, supra* at 486:

> [I]n the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, *to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.* [Emphasis added.]

Several leading commentators have also recognized that the defendant's interest lies in the completion of the trial *before a particular tribunal.* See LaFave & Israel, Criminal Procedure (2d ed), p 1057:

> [T]he Court recognized as an aspect of jeopardy bar the protection of "the defendant's 'valued right' to have his trial completed by a particular tribunal." Implicit in this protection is the recognition not only that there must be a barrier to prosecution manipulation of a trial termination to give it another chance, but also that the termination of the trial without verdict may hurt the defendant even without such manipulation. Every jury has its own character and the jury lost may be more favorably disposed to the defendant than the next jury. [Citations omitted.]

Consequently, we do *not* proceed on the assumption that a defendant's "valued right to have his trial completed by a particular tribunal" is merely incidental to his primary interest in finality. For this reason, defendant Hicks' rejection of Judge Boyle's offer to complete the trial cannot constitute consent to the mistrial.

objection to Judge Curtis' recusal. Defendant's motion evidenced his belief that the functional equivalent of a mistrial had occurred upon Judge Curtis' recusal. Although we reject this view today, we decline to transform defendant's attempted clarification of the recusal into consent for a mistrial occasioned by an event outside of defendant's control.

B

With respect to the manifest-necessity exception to double jeopardy, we heed the counsel provided by the United States Supreme Court in *Somerville, supra,* to decide each case on the basis of its own unique factual setting. We find instructive the analysis employed by the dissenting Court of Appeals judge in *Hicks.* Our focus must be on what actually occurred at the trial court level. Accordingly, we turn to a more detailed examination of the factual setting of each of these cases.

1

a. *PEOPLE v HICKS*

As noted above, despite opposition to recusal expressed by counsel for defendant Hicks, Judge Curtis recused herself after the assistant prosecutor discovered and called attention to the judge's relationship with defendant's brother. Judge Curtis expressed her reasoning:

All right. The problem with sitting as a judge, particularly in a waiver trial is that not only do I have to be concerned about whether I might be influenced in my rulings or in my findings by knowing someone in the defendant's family but also whether or not it looks improper, the appear-

ance of impropriety and the Cannons [sic] refer to
both of those situations as it applies to judges. *I
might be influenced by knowing his brother now
that I know that I know his brother. I don't really
think that I would be, but I think just as impor-
tant is the fact that it would not look good,* that
the appearance of impropriety could certainly re-
sult from my continuing as the trier of fact in this
case. . . . I don't think that it is proper for the
Court to continue in this case for the reasons that
I have just stated *and I don't think it's proper to
dismiss the case either.* [Emphasis added.]

* * *

I am not necessarily in agreement that [the
assistant prosecutor] created the mistrial. . . .

I think the better way of resolving this is to
recuse myself, disqualify myself from further pro-
ceedings in this matter and to refer the matter to
the chief judge . . . to determine whether or not
this case should be dismissed or a mistrial de-
clared because I suppose one might argue that my
decision regarding a dismissal or mistrial might be
influenced by my knowledge of the defendant's
brother, or my knowing the defendant's brother.

Judge Curtis recused herself, and shortly there-
after the parties appeared before Judge Boyle, to
whom the case was assigned.[24]

After reviewing what had transpired in Judge
Curtis' court, Judge Boyle concluded that a mis-
trial had not been formally declared; he discerned
that neither party desired a mistrial, and then he
observed:

That leaves a number of options open. I could
continue with that trial and use the transcript, or
we could continue with the trial and have all the
witnesses recalled before me, or I could declare a
mistrial and the defendant could then decide as a
matter of a new trial whether to have a jury or a

[24] See n 5.

bench trial in front of me. That option in my view goes exclusively to the defendant.

Defense counsel responded by stating:

It would be our position that the Court really doesn't have the options of continuing the case from where it left off or recalling the witnesses. We believe that once Judge Curtis recused herself, that is a technical declaration of a mistrial.[25]

Judge Boyle stated that "what [Judge Curtis] did was the functional granting of a mistrial whether or not she used the words . . . ." He entered a mistrial "as an official thing to clean up what happened there," but he denied defendant's motion to dismiss, concluding that Judge Curtis' expressed discomfort with the situation justified her recusal:

I wouldn't have done what she did, I've already made that perfectly clear. But I'm not gonna say that what she did was wrong . . . where a judge can certify on the record that the judge says there is a manifest necessity for me to excuse myself from continuing as a fact-finder in this case, an appellate tribunal ought to be pretty loathe to say that's not manifest necessity if the judge thinks its manifest necessity.

And for that reason, I'm gonna deny the motion to dismiss on grounds of double jeopardy . . . .

---

25 Defense counsel continued:

And we would say that it follows the rationale of *People* versus *Little* [180 Mich App 19; 446 NW2d 566 (1989)] and in fact that . . . we elected to have the case heard before her and in fact it was heard before her, and that any action that she took to recuse herself, although she did not specifically state that she declared a mistrial, in fact created a mistrial.

### b. *PEOPLE v BELLEW*

In *Bellew,* after the trial had begun and witnesses had testified, Judge Curtis granted the assistant prosecutor's motion for disqualification, which alleged that the defense attorney and the judge's spouse were somehow associated in the practice of law.[26] Judge Curtis referred the matter to the chief judge without holding a hearing on the allegations.

The parties immediately appeared before the chief judge, where they agreed that Judge Curtis had not declared a mistrial.[27] The prosecutor focused on Judge Curtis' statement that she was "simply refer[r]ing it to Chief Judge Roberson for assignment,"[28] and argued that a successor judge should continue the trial. The chief judge told the prosecutor to find case authority for substituting a judge midtrial, or he might send the case back to Judge Curtis.

When the parties appeared again before the chief judge, the prosecution agreed that a mistrial had to be granted, but asserted that retrial should be permitted, because Judge Curtis' recusal was

[26] The motion alleged that the defense attorney and the judge's spouse listed the same address, including identical suite numbers, and that a telephone call to Judge Curtis' spouse's office seeking defense counsel received the reply that defense counsel was not in, but would return the call.

[27] This was clear from a question that had been put to Judge Curtis by defense counsel:

> *Mr. Pookrum:* Your Honor, may we, may I understand what the actual status is. Is the Court in effect granting a mistrial?
> *The Court:* No, I am simply refering [sic] it to Chief Judge Roberson for assignment.

[28] Judge Curtis stated that the chief judge would "do whatever, hear any motions, or send it to the appropriate judge for hearing of motions. I am simply granting the motion filed by the People."

analogous to the death of a judge in the middle of the trial.

The chief judge granted the mistrial, and later granted defendant's motion to dismiss, holding that retrial was barred by the Double Jeopardy Clause:

> As in *Little*,[29] the defendant emphatically objected to the declaration of a mistrial when the trial court failed to make explicit findings as to manifest necessity. Although the trial court found an appearance of impropriety, manifest necessity to justify a mistrial has not been demonstrated. The trial judge clearly indicated that she would be able to remain impartial.[30]

2

In each of these cases, the record establishes that Judge Curtis did not formally declare a mistrial. She merely recused herself.

In each case, the defendant contends that Judge Curtis' action in recusing herself was functionally equivalent to declaring a mistrial. Acceptance of this interpretation would render the failure to formally declare a mistrial virtually meaningless; the applicable analysis would be similar to that employed had Judge Curtis actually declared the mistrial.

In contrast, the prosecutors in both cases urge us to treat Judge Curtis' midtrial recusal and refusal to further participate as an illness or other disability sustained in the middle of the trial. This

---

[29] *People v Little*, n 25 *supra*.

[30] This is a somewhat inaccurate characterization of the record. Defendant strenuously objected to Judge Curtis' *recusal*, not her declaration of a mistrial, because Judge Curtis never declared a mistrial.

midtrial disability constituted manifest necessity justifying the mistrial. Put another way, the recusal in the middle of trial caused the mistrial; it was not the mistrial itself.

We find the prosecutors' arguments more persuasive on this issue. A mistrial is defined as a "[t]rial which has been terminated prior to its normal conclusion."[31] Although Judge Boyle ultimately concluded in *Hicks* that Judge Curtis' actions were the functional equivalent of a mistrial, he reached this conclusion only after defendant Hicks had rejected the proffered alternatives to aborting the trial:

> Unless the defendant consented to go forward in front of another judge with the same continued proceeding, either using the transcript, as I've already made perfectly clear on the record, if the defendant opted for that, I'd do that even over the prosecution's objection and I would do that because I think the defendant does have a right to that alternative.
>
> But the defendant doesn't wish to do that and I don't think the defendant can be forced to do that.

Judge Boyle's exploration of alternatives supports our conclusion that Judge Curtis' actions should not be equated with a mistrial.[32] While the options were admittedly limited, the trial should not have been terminated until such options had been considered. Stated another way, Judge Curtis' recusal operated neither as an automatic termination of the proceedings nor a necessary foreclosure of the continuation of such proceedings before

[31] Black's Law Dictionary (6th ed), p 1002.

[32] The chief judge's failure to articulate available options in *Bellew* does not mandate the conclusion that Judge Curtis' recusal was the functional equivalent of a mistrial. Rather, the failure to consider alternatives is relevant to the question whether the ultimately declared mistrial was justified by manifest necessity.

another judge. On this basis, we cannot conclude that Judge Curtis' recusal, without more, *necessarily* terminated the trial before its natural conclusion.

Consequently, we adopt the argument advanced by the prosecutors, and treat Judge Curtis' midtrial recusal and refusal to further participate as a "disability" incurred by the factfinder during the trial. Support for this characterization can be found in the decision of the United States Court of Appeals for the Fourth Circuit in *United States v Sartori*, 730 F2d 973, 976 (CA 4, 1984),[33] that a trial judge's midtrial recusal was encompassed within the term "other disability" contained in Rule 25(a) of the Federal Rules of Criminal Procedure.[34] While the dispositive issue in *Sartori* was

[33] In *Sartori*, the defendant was a medical doctor who practiced "holistic" medicine. Two of defendant's deceased patients were cancer patients, and the trial judge was an active member of the American Cancer Society. After defense counsel informed the judge that it would not agree to a substitution of judges for sentencing purposes were the defendant to be convicted, the government suggested that judges be substituted under Rule 25(a), which permits substitution when the trial judge is unable to proceed because of any other disability.

The trial judge rejected this proposal on the basis of a Fourth Circuit decision that he erroneously read as condemning this practice, and then declared a mistrial over the defendant's objection on the ground that the ends of public justice would be defeated by continuing the trial.

The Fourth Circuit held that a midtrial recusal constitutes an "other disability" under Rule 25(a). Substitution of trial judges was thus permitted under Rule 25(a).

Despite its determination that a midtrial recusal was an "other disability" for purposes of Rule 25(a), the Fourth Circuit concluded that the trial judge's failure to consider this option precluded a conclusion that manifest necessity existed to justify retrial.

[34] Rule 25(a) of the Federal Rules of Criminal Procedure provides:

If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial.

the trial court's failure to consider reasonable alternatives to a mistrial, alternatives existed once the court recognized that a midtrial recusal was analogous to a disability.[35]

We believe Judge Curtis' refusal to further participate presented a situation not unlike that created by the midtrial disability of a trial judge. We are cognizant of the general rule, reiterated in *Sartori,* that trial judges must consider reasonable alternatives before declaring a mistrial. We note, however, that in contrast to the district judge in *Sartori,* Judge Curtis never reached the moment when reasonable alternatives were to be explored. For purposes of this trial, she became "disabled" when she recused herself, yet at this point, she had not declared a mistrial. We conclude, therefore, that our focus cannot rest solely upon Judge Curtis; rather, it must extend to the situations presented to and the actions of the successor judges.[36]

---

[35] Although *Sartori* is distinguishable in that it involved a federal jury trial, this difference does *not* undermine the conclusion that a recusal in a bench trial can be deemed a disability. Rather, this distinction is relevant only in determining whether substitution of judges was permissible. More specifically, while substitution of judges was deemed permissible in *Sartori,* it would have been precluded in *Hicks* absent consent by both the defendant and the prosecutor. See MCR 6.440(B), which states:

> During Bench Trial. If a judge becomes disabled during a trial without a jury, another judge may be substituted for the disabled judge, but only if
> (1) both parties consent in writing to the substitution, and
> (2) the judge certifies having become familiar with the record of the trial, including the testimony previously given.

[36] While *Sartori* enables us to analogize a recusal in the middle of trial to a disability, it does not allow us to dispense with the consideration of alternatives. Judge Curtis' recusal without declaring a mistrial merely allows us to focus on her successor judge in determining whether reasonable alternatives to a mistrial were considered.

3

a. *PEOPLE v HICKS*

Recognizing the paucity of options available, Judge Boyle offered to preside over the completion of defendant's trial, or to declare a mistrial. Defendant justifiably withheld his consent to the former, and declined to request the latter.

While the former option was designed to protect defendant's interest in terminating the proceedings, once begun, it could not restore his "valued right to have his trial completed by a particular tribunal," lost upon Judge Curtis' recusal. *Wade, supra* at 689. Once defendant rejected the "lesser included" protection of finality, Judge Boyle had no choice but to declare a mistrial. Under these circumstances, we conclude in accordance with *Perez* that retrial will not contravene the protections afforded by the Double Jeopardy Clause.[37]

---

[37] It is illuminating to view the proceedings through the "jaundiced eyes of a general public," whose distrust of public officials and dislike for "legal technicalities" that are the cornerstone of our constitutional liberties cannot be disputed. As aptly characterized by the dissent in the Court of Appeals:

This case runs the danger of looking to the public as follows: The judge has a close relationship with a brother of the defendant. She says nothing about that, perhaps hoping that no one will find out. The prosecutor reminds her of this relationship, therefore telling her that the cat is out of the bag. It now is apparent that there will be problems because of the known relationship between the judge and the defendant's family. The prosecution does not move for a mistrial, to disqualify the judge, or for anything else. The judge refused to participate further and, if the double jeopardy claim is upheld the defendant gets off absolutely free from a life offense (and from a charge of possession of a firearm during the commission of a felony) because the trial judge, by some legal mumbo jumbo, made it forever impossible for the prosecution to continue the case against the defendant to judgment and sentence. If that doesn't evoke the "appearance of impropriety," I do not know what does. [201 Mich App 208 (J. T. HAMMOND, J., dissenting).]

### b. *PEOPLE v BELLEW*

In contrast to Judge Boyle's performance in *Hicks,* the chief judge in *Bellew* did not engage in a "scrupulous exercise of discretion." Although his actions in reserving a decision on whether a mistrial should be granted were laudable, his failure to consider alternatives precludes a determination that manifest necessity justified his declaration of a mistrial in *Bellew,* unless it can be concluded that no reasonable alternative existed.

While it is arguable that no reasonable alternative existed, and it is perhaps probable that defendant Bellew would have refused any alternative offered, such speculation cannot support a conclusion that manifest necessity existed. At a minimum, the chief judge should have expressly raised the possibility of completing the trial before a different judge. Even after losing his "particular tribunal," defendant may have opted to exercise his "lesser included" interest in finality, and chosen to continue the trial before another factfinder, preserving any recorded testimony that he perceived to be favorable.[38]

The chief judge did allude to the possibility of appealing Judge Curtis' recusal:

> Hold it, Your remedy is in the Court of Appeals, not here, because I have no authority to rule on her motion to disqualify herself once she grants it.

Like the dissent in the Court of Appeals, we neither suggest nor believe that this is or even might be true. Undoubtedly, there will be some who will believe Judge Curtis might have conspired to obstruct justice. She alone can deny this. Our paramount concern, however, is the shadow cast on the integrity of the entire judiciary in this state.

[38] See LaFave & Israel, n 23 *supra,* p 1057 ("if the Government may reprosecute, it gains an advantage from what it learns at the first trial about the strengths of the defense case and the weakness of its own"); see also *People v Benton,* 402 Mich 47, 62; 260 NW2d 77 (1977) (mistrial "relieved the prosecutor of the embarrassment of having his own witness exculpate the defendant").

We are not suggesting such an appeal should have been taken; we are merely noting another option that the chief judge failed to adequately explore.

We will not attempt to discern whether defendant would have accepted any of these options. It is sufficient for our purposes that options existed that remained unexplored. *People v Benton,* 402 Mich 47; 260 NW2d 77 (1977).[39]

Moreover, we note that allowing a retrial of defendant Bellew would subject him to a *third* trial on the charge of receiving and concealing stolen property in excess of $100. Finding this to be a close case, and being cognizant of the command to resolve doubts in favor of the defendant, *Downum, supra,* we decline to hold that manifest necessity existed to justify the mistrial in *Bellew.*[40]

IV

Accordingly, we conclude that Judge Curtis' recusal and refusal to continue in both *Hicks* and *Bellew* is analogous to a midtrial disability suffered by the presiding judge, and that the determination whether manifest necessity existed to justify a mistrial necessarily depends on whether a "scrupulous exercise of discretion" by the successor judge would have revealed reasonable alternatives to declaring a mistrial. We conclude that only Judge Boyle properly considered available alternatives to declaring a mistrial, and that in *Hicks,* the defendant's justified refusal of the prof-

[39] See *United States v Cameron,* 953 F2d 240, 243 (CA 6, 1992) ("While the Constitution does not require a trial judge to conduct a hearing on the record, the record must support the finding that manifest necessity justified the declaration of a mistrial." Citations omitted.).

[40] Moreover, we note that the prosecutor moved for Judge Curtis' disqualification in *Bellew,* and consequently must bear some responsibility for her decision to recuse herself in the middle of trial.

fered alternatives constituted manifest necessity for the mistrial. Consequently, defendant Hicks may be retried consistent with the protections afforded by the Double Jeopardy Clause, but retrial of defendant Bellew is barred by the Double Jeopardy Clause.

Accordingly, we would reverse the decision of the Court of Appeals in *Hicks* and would remand for retrial, and we would affirm the decision of the Court of Appeals in *Bellew.*

MALLETT, J., concurred with GRIFFIN, J.

BRICKLEY, J., concurred only in the result.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). In each of these consolidated cases, the trial judge recused herself midtrial, stating that an appearance of impropriety on her part may have existed. In *People v Hicks,* the successor judge gave the defendant three options; in *People v Bellew,* the successor judge did not. The successor judges both declared mistrials. The Court of Appeals held that retrials were barred by double jeopardy.[1]

In its analysis, the lead opinion focuses on one distinction between the two cases: whether the successor judge gave the defendant options before declaring a mistrial. The lead opinion does not address the threshold issue whether the trial judge's recusal was proper.

Even though the lead opinion reaches the proper result in *Bellew,* I must respectfully dissent in both the instant cases.

---

[1] *People v Hicks,* 201 Mich App 197; 506 NW2d 269 (1993); *People v Bellew,* unpublished per curiam opinion of the Court of Appeals, issued January 7, 1994 (Docket No. 157434).

### I. THE CONSTITUTIONAL STANDARD

#### A. DOUBLE JEOPARDY

In *People v Dawson,* 431 Mich 234; 427 NW2d 886 (1988), this Court examined the Double Jeopardy Clauses found in the Michigan and federal constitutions. We noted that "[t]he purpose of the double jeopardy prohibition is to limit the state to having generally only one attempt at obtaining a conviction." *Id.* at 250. We further explained:

> The Double Jeopardy Clause does not bar all retrials. . . . The [United States Supreme] Court has fashioned a balancing test focusing on the cause prompting the mistrial. The thrust of the Court's decisions is that the Double Jeopardy Clause does not bar retrial where the prosecutor or judge made an innocent error or *where the cause prompting the mistrial was outside their control.* Where the motion for mistrial is made by the prosecutor, or by the judge sua sponte, retrial will be allowed if declaration of the mistrial was "manifest[ly] necess[ary]" . . . . [*Id.* at 252. Emphasis added.]

We reiterated this balancing test:

> "[D]efendant's interest in finality . . . [and] in having his guilt or innocence decided in one proceeding . . . must be balanced against society's interest in affording the prosecutor one full and fair opportunity to present his evidence to the jury." [*Id.* at 252, n 44, quoting *Oregon v Kennedy,* 456 US 667, 682; 102 S Ct 2083; 72 L Ed 2d 416 (1982) (Stevens, J., concurring).]

#### B. MANIFEST NECESSITY

In *Dawson,* we restated the manifest-necessity concept:

> "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any

verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." [*Dawson* at 252, quoting *United States v Perez,* 22 US (9 Wheat) 579, 580; 6 L Ed 165 (1824).]

Further, "[w]here a reviewing court holds that the mistrial was not manifestly necessary, the double jeopardy prohibition bars retrial." *Id.* at 252-253, n 47 (citation omitted).

In *United States v Jorn,* 400 US 470, 485; 91 S Ct 547; 27 L Ed 2d 543 (1971) (plurality), Justice Harlan stated that if the defendant does not consent to the motion for mistrial, "the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." (Citation omitted.) Justice Harlan emphasized the defendant's interest:

> Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate. [*Id.* at 486.]

In *People v Benton,* 402 Mich 47, 57, 61; 260 NW2d 77 (1977), a plurality of this Court embraced *Jorn's* direction to the trial judge to explore "viable alternative curative measures before *sua sponte* declaring a mistrial." Moreover, "[b]efore a trial judge *sua sponte* declares a mistrial he or she should make explicit findings, after a hearing on the record, that no reasonable alternative exists."

## II. THE CASES AT BAR

The lead opinion properly focuses its inquiry on

whether manifest necessity justified each mistrial.[2] It relies on direction from *Jorn:*

> [T]he determination whether manifest necessity existed to justify a mistrial necessarily depends on whether a "scrupulous exercise of discretion" by the successor judge would have revealed reasonable alternatives to declaring a mistrial. [Opinion of Griffin, J., p 844.]

I agree with the lead opinion's analysis of the constitutional considerations up to this point. However, I would add an additional inquiry that we stated in *Dawson:* whether the cause prompting the mistrial was outside the prosecutor's and the trial judge's control. *Id.* at 252.

In each of the cases at bar, I would hold that the cause prompting mistrial was within the control of the prosecutor or of the trial judge. Therefore, neither mistrial was compelled by manifest necessity.

In each case, the lead opinion sidesteps the issue whether the trial judge's recusal, on the basis of the appearance of impropriety, was justified.[3] Instead, the lead opinion equates the trial judge's recusal to a disability and examines the successor judge's actions. By focusing on the "clean-up" part of the case histories, the lead opinion would create an arbitrary, bright-line: A judge can disqualify

---

[2] Neither defendant consented to waive his right to avoid double jeopardy.

[3] The court rule provides:

> A judge is disqualified when the judge cannot impartially hear a case . . . . [MCR 2.003(B).]

If a judge can impartially hear a case, a judge may not properly recuse herself over the objection of a party merely because there may be an appearance of impropriety, especially in a bench trial after the first witness has been sworn and the defendant is deemed to be "in jeopardy" for purposes of the Double Jeopardy Clause.

himself from a case for any reason, and as long as the successor judge recites a litany of options, whether or not they are meaningful options,[4] manifest necessity is established and retrial can proceed.

Unfortunately, as Justice Harlan indicated,[5] manifest necessity cases are much more complex and should be decided by the constitutional balancing test. Accordingly, I believe that the sounder approach is to focus on the real cause of each trial's termination: the trial judge's recusal without apparent justification. I would *then* determine whether manifest necessity existed, "whether a 'scrupulous exercise of discretion' by the successor judge would have revealed reasonable alternatives to declaring a mistrial," GRIFFIN, J., *ante* at 844, and whether the cause of the mistrial was outside the control of the prosecutor and the trial judge. I turn now to the individual cases.

### III. *PEOPLE v HICKS*

In *Hicks,* neither party moved for recusal. The trial judge, sua sponte, recused herself and transferred the case to the chief judge, who in turn assigned the case to a successor judge. When the trial judge recused herself, the prosecutor could have filed an interlocutory appeal for a determina-

---

[4] In *Hicks,* the successor judge offered three options that were each detrimental to the defendant. Opinion of GRIFFIN, J., pp 835-836. For instance, recalling witnesses would deprive the defendant of any points made on the first cross-examination; at reexamination, the witnesses would be anticipating the defense counsel's strategy. Further, simply substituting judges in a *bench* trial would deprive the defendant of having his trier-of-fact hear firsthand the testimony of the witnesses on cross-examination. Finally, the option of declaring a mistrial would deprive the defendant of his preferred choice of having the first trial judge decide his fate.

[5] *Jorn* at 485. The discretionary decision to grant or deny a mistrial cannot be resolved by "rules based on categories of circumstances . . . ."

tion whether the appearance of impropriety was sufficient to justify recusal and, in turn, whether manifest necessity was established, compelling a mistrial. The prosecutor did not do so. If the appellate court had ruled that the trial judge should proceed with the trial, the trial could have continued to its conclusion.[6] A mistrial would then have been avoided.[7] Therefore, the cause of the mistrial was within the prosecutor's control.

I would hold that defendant Hicks' right to have his fate decided in one proceeding by the sitting trial judge outweighed society's interest in prosecuting him where the prosecutor did not pursue an interlocutory appeal of the trial judge's recusal in order to preserve the prosecutor's claim that manifest necessity compelled the mistrial.

### IV. *PEOPLE v BELLEW*

In *Bellew,* the prosecutor moved for recusal. The trial judge granted this motion over the defendant's objection and recused herself.[8] Even though the trial judge did not declare a mistrial, the cause of the mistrial was within her control: she could have referred the case to the chief judge for a hearing on whether she could proceed.[9] If the chief

---

[6] In *Hicks* at 202, the Court of Appeals majority found that the mere appearance of impropriety did not establish manifest necessity.

[7] On the other hand, if the appellate court had ruled that the trial judge should not proceed, then a mistrial would have been proper, and it would have been compelled by manifest necessity.

[8] I reject Justice BOYLE's contention that defendant Bellew waived his right to avoid double jeopardy. The defendant combined his motion for mistrial with a motion to dismiss on double jeopardy grounds. Further, he had vigorously objected to the trial judge's recusal. Even the prosecutor in the instant case expressly declined to rely on consent. Therefore, I believe that the defendant's motion for mistrial was not a waiver of his constitutional protection against double jeopardy.

[9] In fact, the defendant requested an evidentiary hearing, which the judge refused to conduct.

judge then ruled that she could proceed, the trial could have proceeded to its conclusion.[10] A mistrial would then have been avoided.[11]

I would hold that defendant Bellew's right to have his fate decided in one proceeding by the sitting trial judge outweighed society's interest in prosecuting him where the trial court granted the prosecutor's motion to disqualify herself, over the defendant's objection, without first determining that recusal was necessary.

### V. CONCLUSION

I would find that a reasonable alternative to mistrial existed, i.e., a hearing on whether recusal was required, and that the cause of the mistrial was not outside the control of the prosecutor in *Hicks* and the trial judge in *Bellew.* Therefore, in both of the instant cases, I would affirm the Court of Appeals holding that retrial was barred by double jeopardy.

LEVIN, J., concurred with CAVANAGH, C.J.

RILEY, J. (*concurring in part and dissenting in part*). I sign Justice BOYLE's dissenting opinion in *People v Bellew.* I write separately to express my agreement with the result of the lead opinion in *People v Hicks.* On these facts, defendant Hicks did not consent to a mistrial. Because there existed a manifest necessity to declare a mistrial, retrial of Hicks does not violate the Double Jeopardy Clause.

---

[10] The prosecutor could then have chosen to file an interlocutory appeal.

[11] If the chief judge ruled that she could not proceed, then, subject to appeal, a mistrial would have been proper and compelled by manifest necessity.

Boyle, J. (*dissenting in Bellew*).

I

Defendant Rodney Bellew was initially charged with four counts of receiving and concealing stolen property over the value of $100, four counts of altering a vehicle identification number (VIN) with the intent to mislead regarding identity, and owning or operating a chop shop. Before trial, the prosecutor dismissed three of the four receiving and concealing stolen property counts and the chop shop count because of an inability to produce material witnesses. At the conclusion of a waiver trial before the Honorable Daphne Means Curtis, the defendant was found guilty of receiving and concealing stolen property over $100 and of the four counts of altering a VIN with the intent to mislead another regarding the identity of the motor vehicle.

Before sentencing, the defendant dismissed his attorney and retained attorney Walter Pookrum, who filed a motion for a new trial on the basis of ineffective assistance of counsel. Several hearings were held between November 21, 1991, and February 24, 1992. On February 24, 1992, Judge Curtis found prior counsel ineffective in respect to the receiving and concealing of stolen property count, and granted defendant's motion for a new trial on that basis.

Defendant waived a trial by jury, and a bench trial before Judge Curtis began on June 9, 1992, but was not finished because of the court's docket. The trial was adjourned until June 23, 1992 upon agreement of the parties.

On June 16, 1992, the prosecutor learned about what seemed to be a business arrangement between new defense counsel and Paul Daniel Curtis, the trial judge's husband. Although the exact details of the arrangement were not known by the

prosecutor, business cards indicated that the two individuals shared a common office, a common fax number, and the same receptionist. The prosecutor represented in his written motion that a call to Mr. Pookrum at Mr. Curtis' office yielded the response that Mr. Pookrum was not presently in but that they would have him return the call.

A motion to disqualify was brought before Judge Curtis on June 23, 1992. Without granting a mistrial, Judge Curtis recused herself "[t]o insure that each of the sides in this particular litigation feels that their rights are protected and that impartiality is assured . . . ."

The litigants then appeared before Judge Dalton Roberson, who almost immediately suggested that the propriety of Judge Curtis' recusation was a matter for the Court of Appeals, not himself. The prosecutor then argued that the case should continue with another judge. The judge responded by stating twice that he did not think it was permissible to switch triers of fact in the middle of a trial, and that a mistrial had to be declared. Each time, defense counsel agreed. The court scheduled a subsequent hearing to allow the prosecutor to submit authority on the issue of changing triers of fact in a bench trial.

At the hearing, the prosecutor began by stating, "I questioned whether you had to grant a mistrial. At that point, your Honor, I looked into it. The defense said you had to grant a mistrial. I agree, your Honor, I think you should grant a mistrial and assign it for trial." With defense counsel stating, "I don't think you have any choice about that," Judge Roberson formally declared a mistrial. The discussion turned to whether a second trial would violate the Double Jeopardy Clause.

On September 25, 1992, Judge Roberson issued an opinion holding that retrial would be barred on

double jeopardy grounds. The prosecutor appealed, and the Court of Appeals affirmed.

## II

At the point that Judge Curtis recused herself, the defense counsel had two choices, each of which he clearly understood. He could have continued the trial before a different judge who had read the transcripts, as the prosecutor initially suggested, and preserved his objections to recusal for appeal in the event of conviction. Alternatively, defense counsel could have opted to abandon the trial and begin anew. Counsel objected to reassignment, insisted on a mistrial, and the mistrial was declared at his request.

The defendant now attempts to fashion a third option, one that is the moral equivalent of eating his cake and having it too. The defendant, who asked for the mistrial, now claims that the state is barred from further prosecution because the mistrial was not necessary. The lead opinion agrees and holds the following:

1. The defendant's request for a mistrial did not lift the bar to double jeopardy because he did not have the option of completing the trial before the judge who began it.
2. Therefore, retrial is barred unless the prosecutor shows manifest necessity for the mistrial.
3. The retrial was not manifestly necessary because the judge did not "explore" the defendant's choices before granting his request.

Because I disagree with each of these propositions, I respectfully dissent. I would hold:

1.  The defendant's request for the mistrial
    lifted the bar to double jeopardy because
    the defendant's request was not intention-
    ally provoked by the prosecution.
2.  Because the mistrial was declared at the
    defendant's request, the state does not need
    to justify the declaration. The "manifest
    necessity" strand of double jeopardy prece-
    dent applies where a mistrial is granted
    over the defendant's objection.
3.  Even if this case were properly analyzed
    under the line of cases involving sua sponte
    declarations of mistrial, or mistrial over
    the defendant's objection, thus requiring
    the prosecution to show manifest necessity,
    it has met this requirement. Judge Rober-
    son's decision to grant a mistrial was neces-
    sary in the strictest sense of the word.
    Because counsel resisted any alternative,
    he had no other choice.
4.  The lead opinion's requirement that the
    judge must "explore" alternatives available
    to the defendant may be appropriate where
    the cause of the mistrial is subject to ma-
    nipulation by the prosecutor, and the de-
    fendant asserts feasible alternatives to a
    mistrial. Where the trial has begun and
    the cause of the mistrial is not one that the
    prosecutor has manipulated to avoid an
    acquittal, the defendant's interest in com-
    pleting the proceedings is subordinate to
    the public interest in affording the prosecu-
    tion one full and fair opportunity to pre-
    sent the evidence to an impartial fact-
    finder.
5.  Where the situation triggering mistrial is
    potential bias of the factfinder, the trial

court's exercise of discretion in declaring a mistrial is entitled to the highest deference.

### III

The result in *People v Bellew* is governed by application of a very straightforward rule: "a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v Dinitz,* 424 US 600, 607; 96 S Ct 1075; 47 L Ed 2d 267 (1976); see also *Oregon v Kennedy,* 456 US 667, 672-673; 102 S Ct 2083; 72 L Ed 2d 416 (1982). After a trial is aborted on the defendant's own motion, a second trial is barred only "where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial . . . ." *Id.* at 676. There is not the slightest suggestion of such intent here, nor would the record support it. Therefore, the defendant's request for a mistrial waives the bar to double jeopardy, and he may be retried.

### A

The lead opinion initially errs by analyzing both *Hicks* and *Bellew* under the manifest-necessity standard for declarations of mistrial over the defendant's objection. However, as the facts clearly indicate, there is a critical distinction between the cases. The defendant in *Hicks* did not move for a mistrial but resisted any alternative to Judge Curtis' declaration of disqualification. The record in *Hicks* thus arguably presents the issue whether

"manifest necessity" justified the mistrial.[1] How-
ever, this test applies only "[w]here the trial is
terminated over the objection of the defendant
. . . ." *Oregon v Kennedy, supra,* 456 US 672 ("in
the case of a mistrial declared at the behest of the
defendant, quite different principles come into
play").

The lead opinion states that it "cannot conclude
that the defendant [Bellew] consented to the mis-
trial," because he objected to Judge Curtis' deci-
sion to recuse herself and expressed a desire to
conclude the trial before her. *Ante* at 830. The
approach thus confuses defendant's objection to
Judge Curtis' action with the remedy he sought in
light of it.[2] It is necessary to support the proposi-
tion that, because the defendant's ideal choice—
continuing the trial before the judge whose hus-
band he apparently shared an office with—was no
longer available, his request for a mistrial did not
amount to consent. However, the analysis fails to
acknowledge that this method of analyzing a de-
fendant's request for mistrial has been rejected by
the United States Supreme Court. The relevant
inquiry for present purposes is not why counsel
believed that a mistrial should be declared, but
whether he opted for that alternative instead of
choosing to continue the trial. As the lead opinion
acknowledges, defendant sought "a declaration of
a mistrial."

In *United States v Dinitz, supra,* the Supreme
Court emphasized that only a request is necessary
to lift the bar to double jeopardy.[3] The trial court
excluded Dinitz' lead attorney from his trial and

---

[1] I am not participating in *Hicks,* but I believe that defendant's
refusal to consent to any alternative was the "functional equivalent"
of a request for a mistrial.

[2] *Ante* at 831, n 19.

[3] See, e.g., *Dinitz,* 424 US 607 ("'a motion by the defendant for a
mistrial'"); *id.* at 608 ("mistrials granted at the defendant's request or

then declared that if the defendant did not appeal that order, he would have to choose between continuing the trial the next day with co-counsel and a mistrial. Because he felt he needed more time to obtain outside counsel, the defendant elected a mistrial. 424 US 604. He was tried again and convicted on both counts.

A divided panel of the United States Court of Appeals for the Fifth Circuit reversed the convictions for reasons strikingly similar to those employed here to support the conclusion that counsel for defendant *Bellew* did not consent. See GRIFFIN, J., *ante* at 831-832. The Court of Appeals in *Dinitz* reasoned that the trial court's exclusion of counsel had left respondent no choice but to ask for a mistrial and therefore the "request for a mistrial should be ignored and the case treated as though the trial judge had declared a mistrial over the objection of the defendant." 424 US 605. The court held that " 'something more substantial than a Hobson's choice' is required before a defendant can 'be said to have relinquished voluntarily his right to proceed before the first jury.' " 424 US 608 (quoting *United States v Dinitz,* 492 F2d 53, 59 [CA 5, 1974]).

The Supreme Court granted certiorari and reversed, specifically quoting and rejecting the position that the lead opinion here adopts: that the request for mistrial should be ignored. The Court emphasized that

> traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error. . . . In such circumstances, the defendant generally does face a

with his consent"). The Supreme Court appears to use "consent" in a very different manner than the lead opinion: to refer to mistrials not requested by the defendant, but only acquiesced to.

"Hobson's choice" between giving up his first jury
and continuing a trial tainted by prejudicial judi-
cial or prosecutorial error. The important consider-
ation, for purposes of the Double Jeopardy Clause,
is that the defendant retain primary control over
the course to be followed in the event of such ·
error. [424 US 609.]

Double jeopardy rights, unlike the right to coun-
sel, for example, do not require a knowing, intelli-
gent waiver. When a defendant seeks the mistrial,
"the central policy of the Double Jeopardy Clause
—to protect defendants from *government*-insti-
gated multiple prosecutions and sentences—is not
implicated." *United States v Jamison,* 164 US App
DC 300, 305; 505 F2d 407 (1974), cited with ap-
proval in *Dinitz,* 424 US 609 (emphasis in origi-
nal). The *Jamison* court summarized its lengthy
explanation[4] of why mistrial motions cannot be
treated as waivers of rights, which would require
the defendant's personal approval and full advice
of rights, with this concise statement:

> The startling implication of barring reprosecu-
> tion after a mistrial brought about by defense
> counsel's own errors and on his own motion is that
> the government could irrevocably lose the right to
> prosecute for a given crime without itself having
> committed the least impropriety, and with the
> trial judge having erred only in declining to sec-
> ond guess defense counsel as to the accused's best
> interests. [*Id.* at 306.]

---

[4] In part, the court stated the following:

> To treat mistrial motions as waivers of double jeopardy
> protection would be to require among other things that it be
> established that the defendant himself concurred in such mo-
> tions, fully comprehending all his alternatives. . . . Defendant
> would thus be protected from multiple prosecutions brought
> about not by the government but by the errors or misjudg-
> ments of his own counsel. We think this goes too far . . . . [*Id.*
> at 306.]

Confirming that "traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial" the Court further explained in *Dinitz,* 424 US 609:

The respondent characterizes a defendant's mistrial motion as a waiver of "his right not to be placed twice in jeopardy" and argues that to be valid the waiver must meet the knowing, intelligent, and voluntary standard set forth in *Johnson v Zerbst,* 304 US 458 [58 S Ct 1019; 82 L Ed 1461 (1938)]. This approach erroneously treats the defendant's interest in going forward before the first jury as a constitutional right comparable to the right to counsel. It fails to recognize that the protection against the burden of multiple prosecutions underlying the constitutional prohibition against double jeopardy may be served by a mistrial declaration and the concomitant relinquishment of the opportunity to obtain a verdict from the first jury. This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction depends on a knowing, voluntary, and intelligent waiver of a constitutional right. See *Breed v Jones,* 421 US 519, 534 [95 S Ct 1779; 44 L Ed 2d 346 (1975)]; *United States v Wilson,* 420 US 332, 343-344, n 11 [95 S Ct 1013; 43 L Ed 2d 232 (1975)]; *United States v Jorn,* 400 US 470, 484-485, n 11 [91 S Ct 547; 27 L Ed 2d 543 (1971)] (plurality opinion); *United States v Tateo,* 377 US [463, 466; 84 S Ct 1587; 12 L Ed 2d 448 (1964)]. [*Id.* at 609-610, n 11.]

Viewed in this light, the case is on all fours with *Dinitz.* Bellew faced the same alternatives:

(1) continuing with the trial in spite of the judge's decision; or
(2) a declaration of a mistrial. (Compare 424 US 609.)

Like Dinitz, Bellew selected a mistrial. Thus *Dinitz* is controlling not only in its rationale, but in its holding.

The lead opinion appears to limit *Dinitz* to cases in which the defendant can complete his trial with the same factfinder: "Unlike other trial errors, a judge's decision sua sponte to recuse herself after jeopardy has attached in a bench trial deprives a defendant of the option to obtain a verdict from the first factfinder." *Ante* at 832, n 22. While the statement is true, it is constitutionally irrelevant. Like all errors that result in a mistrial, the declaration of a mistrial deprives a defendant of the right to obtain a verdict from the first factfinder.

The issue is not whether the incident precipitating a declaration of mistrial was error or not. The Double Jeopardy Clause protects the defendant's right to choose to proceed with the trial and preserve the error for appeal if he is not acquitted, or to abort the trial and begin again. If defendant decides to abort the trial, his interests have been protected because he has made the choice.

The availability of an alternative to a mistrial—continuing the trial with another judge—was controlled by the defendant. Because he chose not to exercise it, the retrial he requested was not only manifestly necessary, but absolutely necessary.

B

The attempt to distinguish *Dinitz* on the basis that Bellew was "deprive[d] . . . of the option to obtain a verdict from the first factfinder" is based on erroneous assumptions. First, the Supreme Court has held that the option to obtain a verdict in the first trial is not essential to the permissibility of retrial. In *United States v Tateo*, 377 US

466-467, the defendant pleaded guilty during his first trial because of improper threats by the judge. He subsequently withdrew his plea, received a trial, and was convicted. The Supreme Court held that the defendant's double jeopardy rights had not been violated even though he was involuntarily deprived of the choice to take his case to the first jury:

> Tateo contends that his situation must be distinguished from one in which an accused has been found guilty by a jury, since his involuntary plea of guilty deprived him of the opportunity to obtain a jury verdict of acquittal. We find this argument unconvincing. If a case is reversed because of a coerced confession improperly admitted, a deficiency in the indictment, or an improper instruction, it is presumed that the accused did not have his case fairly put to the jury. *A defendant is no less wronged by a jury finding of guilt after an unfair trial than by a failure to get a jury verdict at all; the distinction between the two kinds of wrongs affords no sensible basis for differentiation with regard to retrial.* [377 US 466-467. Emphasis added.]

Second, assuming that Judge Curtis' decision to recuse herself was erroneous, Bellew in fact had the option to complete the trial and challenge the recusal as error requiring reversal. The prosecutor suggested continuation, but the defendant insisted on a mistrial. The statement that defendant Bellew did not waive these alternatives is thus both factually and legally incorrect.

IV

The foregoing indulges the assumptions that the principle right protected by double jeopardy is the

right to have the trial completed before a particu-
lar tribunal, that the interest in finality is a
"lesser included" protection, and that the right to
a particular tribunal applies in a bench trial.
These positions are premised on the language in
*Dinitz* about "taking [the defendant's] case ' "to
the first jury," ' " quoting *United States v Jorn,*
400 US 470, 484; 91 S Ct 547; 27 L Ed 2d 543
(1971). *Ante* at 831, quoting *Dinitz,* 424 US 608.
Applying this language to a bench trial takes it
out of context. Losing the trier of fact in a jury
trial means that the trial cannot continue. In a
bench trial, on the other hand, a second judge may
continue the trial from the point of interruption
by reading the transcripts. See MCR 6.440(B).[5]

The question is whether concluding a bench trial
with a different judge constitutes double jeopardy.
It appears that a defendant's valued right to a
particular tribunal is merely an incident of the
defendant's more generalized interest in being able
to complete the trial itself. Professors Westen and
Drubel's explanation of this position and examina-
tion of the relevant cases merits lengthy mention:

> Before an analysis of this interest in finality,
> however, it may be useful to turn to value (4), i.e.,
> the defendant's "valued right to have his trial
> completed by a particular tribunal." Although the
> Court has never explored the nature of this valued
> right, there are several possible interpretations.
> One is that a defendant has a constitutional inter-
> est in having his case resolved by a tribunal that
> he perceives to be "favorably disposed to his

---

[5] This is not to say that judges are interchangeable for the purposes
of bench trials. Certainly one reason the court rule requires the
parties' consent before changing judges is that the initial decision to
waive a jury trial would depend to some degree on the identity of the
judge. This consideration may have prompted Judge Boyle's offer to
defendant Hicks of the additional alternative of a jury trial before
him.

fate."[6] This suggestion finds no support in the Court's decisions. Assume, for example, that a case, having been assigned to a judge whom the defendant considers favorable, is reassigned to another judge before the trial commences. Or assume that a juror whom the defendant perceives to be favorable is excused and replaced by an alternate juror for no compelling reason. Whatever else may be objectionable about such changes, they can hardly be said to violate double jeopardy. Accordingly, "the [defendant's] interest in having his 'trial completed by a particular tribunal' must refer to some interest other than retaining a factfinder thought to be favorably disposed toward the defendant."

Another meaning is more likely. A defendant has a valued right to have his trial completed by a particular tribunal, not because he has a constitutional interest in the identity of any particular tribunal, but because he has an interest in being able "to conclude his confrontation with society" once it has begun. Once a trial begins, a defendant has a legitimate interest in getting the trial over with "once and for all." It follows, therefore, that he also has an interest in continuing with "the first jury" impaneled in the case because changing the jury means interrupting the trial. To that extent, the defendant's interest in retaining the particular tribunal with which he began is merely an incident of his primary interest in being able to complete the trial itself. [Westen & Drubel, *Toward a general theory of double jeopardy,* 1978 Sup Ct R 81, 89-90.]

Contrary to the assumption of the lead opinion,

---

[6] *Jorn, supra,* 400 US 486. The lead opinion quotes *Jorn* in an attempt to document its assertion that the argument by Professors Westen and Drubel "conflicts with language . . . in *Jorn.*" The above-referenced quotation, however, is from *Jorn,* which was a plurality opinion. Moreover, as subsequent authority confirms, defendant does not have a right to object to a mistrial and claim jeopardy preclusion unless the cause of the mistrial is one that could be manipulated to abort a proceeding that is not going favorably to the prosecution. See *Arizona v Washington,* 434 US 497; 98 S Ct 824; 54 L Ed 2d 717 (1978).

in cases since *Jorn,* the Court has identified the primary interest protected as being able once and for all to conclude confrontation with the state. It is this interest, rather than the value of proceeding with the first tribunal, that is balanced against the public interest in one full and fair opportunity for presentation of the prosecutor's evidence. See, generally, *Illinois v Somerville,* 410 US 458; 93 S Ct 1066; 35 L Ed 2d 425 (1973); *Arizona v Washington,* 434 US 497; 98 S Ct 824; 54 L Ed 2d 717 (1978).

Had the defendant objected to the mistrial and agreed to have the case transferred to another judge, and the prosecutor objected to the transfer, or any other alternative, see n 4 above, thereby causing a mistrial to be declared over the defendant's objection, it might be more persuasively argued that defendant's interest in final confrontation had been violated. However, Bellew's interest in finality could have been served by transferring the case to a different judge. Defendant rejected that alternative, chose to abort the proceedings, and thus waived the opportunity to try the case to conclusion.

V

Ignoring the defendant's request for mistrial, the lead opinion applies the manifest-necessity strand of jeopardy jurisprudence and states that the permissibility of a retrial is governed by the "rule . . . that trial judges must consider reasonable alternatives before declaring a mistrial." *Ante* at 841. The opinion construes this rule, which actually concerns the *availability* of alternatives to a mistrial over the defendant's objection, as a rule about the *"exploration" of possibilities.* On this basis, it concludes that retrial is barred, not be-

cause there were alternatives to a mistrial, but because the judge failed to "adequately explore" them, *id.* at 844:

> At a minimum, the chief judge should have expressly raised the possibility of completing the trial before a different judge. Even after losing his "particular tribunal," defendant may have opted to exercise his "lesser included" interest in finality, and chosen to continue the trial before another factfinder, preserving any recorded testimony that he perceived to be favorable. [*Id.* at 843.]

The lead opinion's emphasis on "adequate exploration" is based on a misunderstanding of *United States v Sartori,* 730 F2d 973 (CA 4, 1984), and fails to acknowledge that the Supreme Court has, in analogous contexts, rejected the contention that a declaration of mistrial must be the least drastic available remedy to constitute "manifest necessity." In *Sartori,* the trial judge abruptly recused himself in the midst of a *jury trial* over the objection of both parties and sua sponte declared a mistrial. A different district judge ruled that the mistrial did not lift the bar to double jeopardy, and the court of appeals affirmed. The court held that it had not been manifestly necessary to declare a mistrial over the defendant's objection because the judge who declared the mistrial had an available alternative—assigning the case to another judge.

*Sartori* actually stands for the proposition that a mistrial should not be declared because of the disability of a judge presiding over a jury trial when the defendant objects to the mistrial and it can be avoided by substituting another presiding

judge.[7] The lead opinion's statement that substitution was precluded in the absence of consent ignores the fact that, unlike defendant Sartori, who objected to the mistrial, defendant Bellew requested a mistrial. Likewise, assuming arguendo that Judge Roberson had to explore alternatives, the defendant declined a different judge and insisted on a mistrial.

The assumption that, as a matter of law, manifest necessity requires the exploration of less drastic alternatives to mistrial also ignores that the United States Supreme Court has specifically rejected the proposition that all other alternatives to a mistrial must be explored on the record in the context of a mistrial triggered by the possibility of bias. In *Arizona v Washington,* 434 US 511, 516-517, the Court held that the record did not have to reflect the exploration and rejection of all available alternatives so as to establish the necessity for mistrial.

In *Washington,* the trial judge granted the prosecutor's motion for mistrial after defense counsel made improper prejudicial arguments during his opening statement. *Id.* at 499-501. Rejecting the argument that the mistrial was not necessary because the judge could have given cautionary instructions to the jury, Justice Stevens explained that "the key word 'necessity' cannot be interpreted literally," but that there are degrees of necessity that vary depending on the circumstances. *Id.* at 506. The highest degree of necessity

[7] See FR Crim P 25(a):

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial.

"is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence . . . ." *Id.* at 508.

At the other end of the spectrum, however, are cases where mistrial is triggered by the possibility that the factfinder may be prejudiced. *Id.* at 510. The Court observed that when the difficulty leading to mistrial is the possible bias of the factfinder, the trial court's determination is entitled to great deference from the reviewing court. Although the mistrial was not strictly and literally necessary because "some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions," the Court held that the bar to double jeopardy was lifted because of the "overriding interest in the evenhanded administration of justice . . . ." *Id.* at 511. The Court summarized its reasoning this way:

> Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, "the public's interest in fair trials designed to end in just judgements" must prevail over the defendant's "valued right" to have his trial concluded before the first jury impaneled. [*Arizona v Washington,* 434 US 516.]

*Washington* illustrates that the focus of inquiry is not the factfinder's actual capacity to be fair to the prosecutor, but the decision to grant the defendant's request.[8] *Ante* at 843-844. Whether Judge

---

[8] Where the manifest-necessity test properly applies, only the mistrial, and not the events giving rise to it, must be necessary:

> [T]he double jeopardy clause does not require "manifest necessity" for the events that triggered the mistrial; manifest necessity for the mistrial itself will ordinarily permit a second trial. See *Illinois v Somerville,* 410 US 458; 93 S Ct 1066; 35 L Ed 2d 425 (1973); *Arizona v Washington,* 434 US 497; 98 S Ct 824; 54 L Ed 2d 717 (1978). If Pavlovic's perspective were

Curtis erred or not is not the proper focus of inquiry even under the manifest-necessity strand of double jeopardy. The inquiry is whether the mistrial was necessary. When possible bias is the triggering event, the declaration of necessity is within the trial court's discretion, and "the highest degree of respect" to the declaration of mistrial is accorded on review.

Judge Curtis stated that she was recusing herself "[t]o insure that each of the sides in this particular litigation feels that their rights are protected and that impartiality is assured . . . ." While disqualification is not a step to be lightly taken, particularly when jeopardy has attached, neither Judge Curtis nor Judge Roberson was obligated to justify her recusation on the basis of the appearance of impropriety by requiring her to prove that she had a financial interest that would in fact make her partial. Assuming the applicability of the manifest necessity standard, as in *Washington,* "the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation . . . ." 434 US 511.

## VI

The approach adopted by the lead opinion presents the obvious potential for unwarranted expansion of double jeopardy claims. Moreover, to the

---

correct, mistrials caused by prosecutorial or judicial errors could never be followed by second trials, because it is never manifestly necessary to make a mistake. Yet *Somerville* held that a prosecutor's blunder in drafting an indictment supplied manifest necessity for a mistrial. See also *Lee v United States,* 432 US 23, 33-34; 97 S Ct 2141; 53 L Ed 2d 80 (1977). Often the blunder escapes notice until the trial is over, yet a reversal may be followed by a second trial. See *Burks v United States,* 437 US 1, 12-15; 98 S Ct 2141; 57 L Ed 2d 1 (1978). If the proceeding is doomed to be reversed, it may be stopped short. [*United States v Buljubasic,* 808 F2d 1260, 1265 (CA 7, 1987).]

extent it is based on a perceived need to discourage unwarranted recusations, it is misguided.

The lead opinion's struggle with applicable authority to reach the explicit conclusion that defendant had a right to have Judge Curtis serve as his particular tribunal is based on the unexpressed premise that to permit a judge to recuse herself from a bench trial after jeopardy attaches would invite corruption. Yet the foreordained result of the lead opinion's conclusion that the defendant's interest in continuing with the particular factfinder is superior to his interest in finality is that the defendant must go free.

While trial judges should be wary of recusing themselves on the basis of a cynical perception of judicial integrity, we should be equally loath to discourage recusal on the basis of a good-faith belief that the circumstances are such that any ultimate verdict would be compromised. A decision that tells trial courts that, despite such a possibility, the trial must be completed on pain of the defendant going free, discourages the honest expression of reservations. Given that the interest in finality could have been accommodated, tolerating rare instances of disqualification far better serves society than repressing judicial candor, issuing compromised decisions, or turning defendants free.

CONCLUSION

For the foregoing reasons, I would reverse the decision of the Court of Appeals and remand the case to Detroit Recorder's Court for trial.

RILEY, J., concurred with BOYLE, J.