# Order

Michigan Supreme Court
Lansing, Michigan

August 13, 2021

159194

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
　　　　　Plaintiff-Appellee,

v

ERNESTO EVARISTO URIBE,
　　　　　Defendant-Appellant.

SC: 159194
COA: 338586
Eaton CC: 13-020404-FC

_____/

On April 8, 2021, the Court heard oral argument on the application for leave to appeal the January 3, 2019 judgment of the Court of Appeals. On order of the Court, the application is again considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals and REMAND this case to the Eaton Circuit Court for a new trial.

The Court of Appeals erroneously concluded that the Eaton Circuit Court did not reversibly err by denying the defendant's motion for a mistrial.[1] In *People v Thorpe*, 504 Mich 230 (2019), we considered the propriety and scope of expert testimony in cases alleging child sexual abuse.[2] We held that "examining physicians cannot testify that a complainant has been sexually assaulted or has been diagnosed with sexual abuse without physical evidence that corroborates the complainant's account of sexual assault or abuse because such testimony vouches for the complainant's veracity and improperly interferes with the role of the jury." *Id*. at 235.

---

[1] Because we hold that a mistrial should have been granted, we need not address whether Dr. Stephen Guertin's testimony about the complainant's statements to him were admissible under the medical-treatment exception to the hearsay rule, MRE 803(4).

[2] Although *Thorpe* was decided after the Court of Appeals decided this case, our decision in *Thorpe* was controlled by prior decisions of this Court. See *Thorpe*, 504 Mich at 254-259.

But that is exactly what Dr. Guertin, the complainant's examining physician, did on cross-examination, redirect, and recross-examination. After Dr. Guertin was asked whether sexual abuse was diagnosed and why his report did not diagnose the complainant as having been sexually abused, he shared his opinion that the complainant was a victim of sexual abuse. Defense counsel questioned him as follows:

> Q. Now, Doctor, Dr. Guertin, I believe in prior times we've had hearings, and I believe you mentioned that sexual abuse can be a diagnosis.
>
> A. Sexual abuse, physical abuse, child abuse is a diagnosis, a medical diagnosis.
>
> Q. Which causes my next question, is that, in your evaluation, under your [a]ssessment portion of your report you never diagnose [the complainant] as being a victim of sexual abuse.
>
> A. Well, I feel that the report, pretty much, speaks for itself in that regard. But if you're asking me do I consider to—her to be a victim, I do.
>
> Q. Well, you didn't put that in your report, Doctor.
>
> A. Well, it says:
>
>> "She gives a very clear history of being sexually molested between the ages of five and nine. She indicates that the person who did this was a man…"
>
> Et cetera.[3]

On redirect, Dr. Guertin affirmatively responded that it was his diagnosis that the complainant had been sexually abused, although his report had not included that

---

[3] The prosecution argues that defense counsel opened the door to Dr. Guertin's responses through this line of questioning. However, the record does not support that position. Instead, the witness independently asserted his belief that the complainant was sexually abused when asked why his report did not include such a diagnosis. We have previously cautioned: "Opening the door is one thing. But what comes through the door is another." *Thorpe*, 504 Mich at 253-254, quoting *United States v Winston*, 145 US App DC 67, 71 (1971) (quotation marks and citation omitted). We agree with the trial court's observations both that the witness "went off on his own" to make these assertions and that it created a problem with the witness vouching for the veracity of the complainant. This is especially true where the trial court had issued a pretrial order specifically prohibiting Dr. Guertin from providing his opinion that the complainant's allegations were credible.

diagnosis. And again on recross-examination, Dr. Guertin continued to expand on this, stating: "I think it should be clear that [my report] supports that [the complainant] was sexually abused. And based on her history to me, I believe that she was."

This testimony was not supported by physical evidence. Instead, Dr. Guertin testified that none of the potential physical evidence he found was necessarily associated with sexual trauma. Without physical corroboration, testimony by an examining physician that sexual abuse occurred impermissibly vouches for the complainant's credibility and veracity. See *id*. at 235; see also *People v Smith*, 425 Mich 98, 109 (1986). Expert testimony asserting that a child was sexually abused without any corroborating physical evidence not only vouches for the complainant's credibility but invades the province of the jury to determine the issue of the case. *Thorpe*, 504 Mich at 265. There was no physical evidence of sexual abuse or any corroborating eyewitnesses of such abuse. As a result, the trial became a credibility contest where the complainant's credibility was chiefly important to the jury's determination.

Instead of granting the defendant's motion for a mistrial, the trial court attempted to correct the error using a curative instruction; however, such an instruction was an insufficient remedial measure. This kind of error is "far more pernicious than a mere evidentiary error." *Id.* at 264. In cases with no corroborating evidence, which boil down to credibility contests, a jury may credit an expert's opinion with enormous weight. See *People v Beckley*, 434 Mich 691, 722 (1990). Once the jury heard Dr. Guertin affirmatively and repeatedly testify that it was his opinion that the complainant was sexually abused, the curative instruction was insufficient to erase the prejudice suffered by the defendant. See, e.g., *People v Terry*, 489 Mich 907 (2011).

In sum, Dr. Guertin repeatedly testified to the ultimate issue of the case—whether the complainant was sexually abused—and this testimony lacked physical corroboration. Such testimony is impermissible because it vouches for the complainant's credibility and veracity and invades the province of the jury to determine this issue. The curative instruction employed by the trial court could not erase the prejudice the defendant suffered by way of this testimony. Thus, the trial court abused its discretion by denying the defendant's motion for a mistrial. See *People v Dennis*, 464 Mich 567, 572 (2001). Accordingly, we REVERSE the judgment of the Court of Appeals and REMAND this case to the Eaton Circuit Court for a new trial.

ZAHRA, J. (*dissenting*).

I dissent from this Court's order reversing the decision of the Court of Appeals and granting defendant a new trial. Although I agree that Dr. Stephen Guertin's testimony improperly vouched for the complainant's veracity and credibility, I disagree with the Court's conclusion that the trial court's curative "instruction was an insufficient remedial measure . . . to erase the prejudice suffered by defendant." For the reasons

stated below, I conclude that the trial court's prompt, well-articulated curative instruction was ultimately sufficient to cure the prejudice caused by Dr. Guertin's improper opinion testimony and that the trial court did not abuse its discretion by denying defendant's motion for a mistrial. Accordingly, I would deny leave.

This case stems from allegations that defendant sexually abused his ex-girlfriend's daughter (the complainant) when she was between the ages of five and nine years old. After the complainant disclosed the abuse, she was referred to Dr. Guertin—an expert in the areas of child sexual abuse, child abuse, and pediatric clinical care—for a medical examination. The complainant recounted the abuse to Dr. Guertin, who then memorialized her statements and his findings of the examination into a report. Before trial, the trial court made clear to both parties that "Dr. Guertin will not be able to testify, in any manner, that he . . . believed [the complainant]" and that "Dr. Guertin also is not going to testify that he has diagnosed her as being the victim of a sexual assault or sexual abuse." Notwithstanding these directions, defense counsel asked Dr. Guertin on cross-examination why his report did not diagnose the complainant as a victim of sexual abuse. Dr. Guertin responded that his report "speaks for itself in that regard" and then volunteered his opinion that the complainant was a victim of sexual abuse. Dr. Guertin then repeated his opinion on recross-examination. After Dr. Guertin was excused, the trial court, outside the presence of the jury, raised the issue of Dr. Guertin's testimony improperly vouching for the veracity of the complainant. The parties agreed to address the issue the next day, at which time defendant moved for a mistrial on the basis that Dr. Guertin had rendered an improper opinion that the complainant had been sexually abused. The trial court denied the motion and instead issued the following curative instruction regarding Dr. Guertin's report and his opinion testimony:

> Ladies and Gentlemen, yesterday, you heard the testimony of Dr. Guertin. Dr. Guertin's report is not evidence because it is not admis—not admissible, not because of the prosecutor or the defense attorney, but because this Court has ruled that it is not admissible under the Rules of Evidence. You are not to consider the report or any statements made by Dr. Guertin regarding the report. You are the trier of fact and shall not consider evidence that has been admitted during these proceedings.
>
> Yesterday, you heard the testimony of Dr. Guertin. At the end of his testimony, you may believe that he rendered an opinion whether sexual assault occurred in this case. That testimony is not allowed and is stricken from the record.
>
> An expert is prohibited from rendering an opinion that sexual assault occurred. You are not to consider any opinion that you think Dr. Guertin had regarding whether sexual assault occurred in this case. That is your decision and only your decision to make.

The jury heard testimony from nine other witnesses, including the complainant, over the course of the four-day jury trial. Defendant was ultimately convicted of four counts of first-degree criminal sexual conduct.[4] In a split decision, the Court of Appeals affirmed, concluding, in relevant part, that the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

Dr. Guertin's opinion that the complainant was a victim of sexual abuse improperly vouched for the veracity and credibility of the complainant resulting in prejudice to defendant. But this conclusion standing alone is legally insufficient to grant defendant a new trial. The dispositive inquiry is whether the trial court's curative instruction cured the prejudice caused by that improper testimony such that the court did not abuse its discretion by denying defendant's motion for a mistrial. A preserved, nonconstitutional error such as this is reviewed for harmless error under MCL 769.26, which provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

"[T]he defendant has the burden of establishing a miscarriage of justice under a 'more probable than not' standard."[5] Further, a trial court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion,[6] which occurs when the court's decision falls outside the range of principled outcomes.[7] "[T]he grant or denial of a motion for mistrial rests in the trial court's sound discretion, and an abuse will be found only where denial of the motion deprived the defendant of a fair and impartial trial."[8]

"It is well established that jurors are presumed to follow their instructions."[9] Although this presumption may be marked more by its practicality than its certainty,[10]

---

[4] MCL 750.520b(1)(a) (victim under 13 years of age).

[5] *People v Thorpe*, 504 Mich 230, 252 (2019), quoting *People v Lukity*, 460 Mich 484, 495 (1999).

[6] *People v Dennis*, 464 Mich 567, 572 (2001).

[7] *People v Watkins*, 491 Mich 450, 467 (2012).

[8] *People v Manning*, 434 Mich 1, 7 (1990).

[9] *People v Graves*, 458 Mich 476, 486 (1998).

[10] *Richardson v Marsh*, 481 US 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the

there is no dispute that the presumption plays an integral role in our system of justice.[11] The human element is innate in jury trials, and as a result, there are bound to be errors. But not all errors are beyond repair. Our criminal justice system provides numerous safeguards to ensure that such errors do not impede a defendant's right to a fair trial, and curative instructions are one of those safeguards. An immediate curative instruction tailored to address a specific error or instance of misconduct is often sufficient to ensure a fair trial,[12] while some errors are too prejudicial to be cured by a jury instruction.[13] Thus, " 'we normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant.' "[14] Stated differently, a curative instruction will presumably alleviate the harm caused by an error or misconduct unless the wrong is so prejudicial that even the strongest curative instruction cannot counteract the prejudice to defendant, thus rendering defendant's trial irreparably tainted and unfair.[15]

---

presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.").

[11] *Marshall v Lonberger*, 459 US 422, 438 n 6 (1983) ("[T]he crucial assumption underlying the system of trial by jury is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed.") (quotation marks and citation omitted); *Opper v United States*, 348 US 84, 95 (1954) ("Our theory of trial relies upon the ability of a jury to follow instructions.").

[12] See *People v Stevens*, 498 Mich 162, 177 (2015) ("Because it is well established that jurors are presumed to follow their instructions, a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct.") (quotation marks, citation, and brackets omitted).

[13] *Francis v Franklin*, 471 US 307, 324 n 9 (1985) ("Cases may arise in which the risk of prejudice inhering in material put before the jury may be so great that even a limiting instruction will not adequately protect a criminal defendant's constitutional rights.").

[14] *Dennis*, 464 Mich at 581, quoting *Greer v Miller*, 483 US 756, 766 n 8 (1987).

[15] See *Stevens*, 498 Mich at 177-178 ("Depending on the circumstances, an immediate curative instruction may further alleviate any appearance of advocacy or partiality by the judge. That said, in some instances judicial conduct may so overstep its bounds that no instruction can erase the appearance of partiality."); *People v Stanaway*, 446 Mich 643, 687 (1994) (explaining that courts will generally not review unpreserved claims of improper prosecutorial remarks unless "a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage

Recently, in the consolidated cases of *People v Thorpe* and *People v Harbison*, this Court held that the admission of expert witness testimony that improperly vouched for the child sexual abuse complainants' veracity and credibility amounted to error requiring reversal.[16] In *Thorpe*, an expert in the area of child sexual abuse and disclosure testified that only 2% to 4% of children lie about sexual abuse and then identified two specific scenarios in which children might lie, neither of which applied to Thorpe's case. Before deliberation, the trial court instructed the jury that the expert's testimony could only be used for the limited purpose of whether the complainant's conduct after the crime was consistent with that of sexually abused children and could not be used as evidence of the crime or that the expert opined that the complainant was telling the truth.[17] This Court did not address the efficacy of that instruction; rather, after concluding that the expert improperly vouched for the complainant's credibility, we noted that the "the prosecution's closing argument on rebuttal highlighted this improper evidence at a pivotal juncture at trial[.]"[18]

The single limiting instruction given to the jury before deliberation in *Thorpe* bears little resemblance to the prompt curative instruction given here. Not only did the trial court here direct the jury not to consider Dr. Guertin's report or any of his statements about the report, the court also struck Dr. Guertin's improper opinion from the record entirely, directed the jury not to consider it, and informed the jury that whether criminal

---

of justice"); *Manning*, 434 Mich at 8-9 ("We do not suggest that a trial court might not appropriately take the more drastic step of declaring a mistrial where it concludes that even the strongest curative instruction would be insufficient protection for a defendant."); *People v Hall*, 396 Mich 650, 655 (1976) ("No objections or requests for curative instructions were made in response to the prosecutor's closing argument, so we will reverse only if such instructions could not have cured any prejudice.").

[16] *Thorpe*, 504 Mich 230.

[17] That instruction read as follows:

> You have heard Thomas Cottrell's opinion about the behavior of sexually abused children.
>
> You should consider that evidence only for the limited purpose of deciding whether BG's acts and words after the alleged crime were consistent with those of sexually abused children.
>
> That evidence cannot be used to show that the crime charged here was committed or that the defendant committed it. Nor can it be considered an opinion by Thomas Cottrell that BG is telling the truth. [*Id*. at 241 (brackets omitted).]

[18] *Id*. at 259.

sexual conduct occurred in this case was solely its decision. Also, unlike the prosecution in *Thorpe*, which used the improper opinion testimony to its advantage during closing arguments, the prosecution here approved of the court's curative instruction and even referred to it during its closing arguments, stating, "[G]oing back to just the instruction you got about Dr. Guertin. That's what that meant; you decide. It doesn't matter what anybody else says. From here on out, it only matters what you say about this case." Defense counsel also briefly acknowledged the special curative instruction during closing arguments, stating, "You had a special instruction[] about Dr. Guertin. Weigh it as you wish." Finally, before the jury retired to deliberations, the trial court reminded the jury of "the two special limiting instructions . . . concerning Dr. Guertin." Accordingly, the single instruction given to the jury before deliberation in *Thorpe* is quite distinguishable from the timely, extensive, and direct curative instruction given here, and the reinforcement of that instruction presented later in the case.

Defendant argues, and this Court now concludes, that the prejudice caused by Dr. Guertin's improper opinion testimony was such that the trial court's curative instruction could not "erase the prejudice suffered by defendant." Of course, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."[19] For example, juries cannot be expected to ignore a defendant's confession that was later deemed inadmissible,[20] nor do we expect them to disregard a confession in which one codefendant implicates another.[21] While the improper admission of Dr. Guertin's testimony vouching for the complainant's credibility is "far more pernicious than a mere evidentiary error,"[22] nothing in our jurisprudence suggests the error is irreparable.

Declaring a mistrial is no small matter. "The power to discharge a jury before a verdict should be exercised 'with the greatest caution, under urgent circumstances, and for very plain and obvious causes.' "[23] Here, the trial court took every available

---

[19] *Bruton v United States*, 391 US 123, 135 (1968).

[20] See *Jackson v Denno*, 378 US 368, 388-389 (1964).

[21] See *Bruton*, 391 US at 135-137.

[22] *Thorpe*, 504 Mich at 264.

[23] *People v Benton*, 402 Mich 47, 60 (1977), quoting *United States v Perez*, 22 US (9 Wheat) 579, 580 (1824); see also *People v Hicks*, 447 Mich 819, 828 (1994), quoting *Perez*, 22 US at 580 (" '[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it

preventive and curative measure to ensure that defendant received a fair trial. Before trial, the trial court informed the parties that Dr. Guertin would not be permitted to testify whether he believed the complainant or whether he diagnosed her as a victim of sexual abuse.[24] After Dr. Guertin testified that he held that opinion and was excused as a witness, the trial court immediately raised the issue of his improper testimony sua sponte. The court then afforded the parties an opportunity to be heard on the matter, weighed the available remedies, and decided that issuing a strong curative instruction was appropriate. The court also reminded the jury of that instruction before deliberation. At oral argument before this Court, defendant's appellate counsel conceded that there was simply nothing else that the trial court could have said in its instruction to the jury or could have done to remedy the error. Unlike the majority, I cannot conclude that the admission of Dr. Guertin's improper opinion testimony, although clearly prejudicial, irreparably tainted defendant's right to a fair trial in light of the trial court's timely curative instruction, nor can I conclude that the trial court's decision to issue that instruction instead of declaring a mistrial fell outside the range of principled outcomes. "A defendant is entitled to a fair trial but not a perfect one."[25]

Finally, I question the ramifications of this Court's decision today on *all* future criminal sexual conduct prosecutions. The decision notes that Dr. Guertin "repeatedly" gave improper testimony, but how many times must a witness repeat such testimony before even the strongest curative instruction will be insufficient? What if the opinion

---

proper to interfere.' "). See also *People v Horn*, 279 Mich App 31, 36 (2008) ("A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way.").

[24] This Court largely faults Dr. Guertin for creating the problem of improperly vouching for the complainant's veracity, citing the trial court's pretrial instruction "specifically prohibiting Dr. Guertin from providing his opinion that the complainant's allegations were credible." However, there is no indication that Dr. Guertin was actually present when the court gave that instruction. Further, defense counsel was the first to mention Dr. Guertin's inadmissible report by asking him whether his report diagnosed the complainant as a victim of sexual abuse, notwithstanding the court's pretrial instruction. Counsel then continued to press Dr. Guertin about the lack of a diagnosis in his report even after Dr. Guertin acknowledged that his report did not contain one. Even assuming defense counsel did not "open the door" to Dr. Guertin's improper opinion testimony, counsel is hardly blameless in contributing to the error.

[25] *Bruton*, 391 US at 135 (quotation marks and citations omitted). Although this Court in the companion case to *Thorpe* held that the erroneous admission of the expert's diagnosis that the complainant suffered from "probable pediatric sexual abuse" amounted to plain, reversible error that "seriously affected the integrity of Harbison's trial," *Thorpe*, 504 Mich at 265-266, this Court notably stopped short of stating that the error deprived Harbison of a *fair* trial under plain-error review.

was not repeated, or if the improper testimony was minimal in the context of the trial as a whole?[26]  One would expect to find no error.  Further, defendant's appellate counsel submitted during oral argument before this Court that a reversal here would not lead to the creation of a per se rule, maintaining that the error must always be weighed against the other evidence presented at trial.  I question how a trial court can accomplish such a task midtrial when all the proofs have yet to be submitted.  Must the prosecution rearrange its case-in-chief to ensure that, in the event such improper testimony is put before the jury through no fault of its own, there is sufficient evidence for the trial court to make a determination?  This Court's decision today ignores these concerns and fails to provide any meaningful guidance to the bench and the bar as to when, if ever, even a strong curative instruction can cure such errors.

In sum, the trial court issued a prompt, well-articulated curative instruction after Dr. Guertin's improper opinion testimony, struck the improper testimony from the record, directed the jurors not to consider it, and informed the jurors that the decision of whether sexual abuse occurred was solely theirs to make.  Both sides referred the jury to the curative instruction in their closing arguments, and the trial court reminded the jury of it again before deliberation.  I conclude that the court's instruction was sufficient to cure the prejudice caused by Dr. Guertin's improper opinion testimony.  And, given the careful, comprehensive steps taken by the trial court to ensure that defendant received a fair trial, the court's decision to issue that instruction instead of declaring a mistrial did not amount to an abuse of discretion.  Because this Court disagrees and grants defendant a new trial, I dissent.

VIVIANO, J. (*dissenting*).

I respectfully dissent from this Court's order reversing the judgment of the Court of Appeals and remanding for a new trial.  I agree that Dr. Stephen Guertin's testimony improperly vouched for the complainant's credibility and invaded the province of the jury.  Such testimony would usually be inadmissible, but in this case the admission of otherwise inadmissible testimony was an invited error, as Dr. Guertin's testimony was responsive to questions from defense counsel.  As a result, the trial court did not abuse its

---

[26] See, e.g., *People v Hawkins*, ___ Mich ___ (2021) (Docket No. 161243).  I dissented from this Court's recent reversal in *Hawkins*, another child sexual abuse case in which a police detective gave improper opinion testimony bearing on the parties' credibility, because the detective's testimony was "sporadic and relatively minor in the context of the trial as a whole," the parties did not draw further attention to it, and the prosecution did not use it to its advantage in closing arguments; thus, I concluded that trial counsel's failure to object to the improper testimony was not outcome-determinative.  *Id*. at ___ (ZAHRA, J., dissenting).

discretion in denying defendant's motion for a mistrial. For these reasons, I would deny leave to appeal.

## I. FACTS AND PROCEDURAL HISTORY

This case stems from allegations that defendant sexually molested his former girlfriend's daughter (hereinafter, the complainant). The complainant had been referred by the police to Dr. Guertin to be examined. Defendant filed a motion in limine to preclude Dr. Guertin from repeating the complainant's statements to Dr. Guertin during the interview and examination, arguing that the statements were inadmissible hearsay and not reasonably necessary for medical diagnosis or treatment under MRE 803(4).[27] At the hearing on the motion, Dr. Guertin testified that "[c]hild abuse and sexual abuse" are medical diagnoses and that his diagnosis of the complainant, "based on the history that she gave, [was] that she was sexually abused." The trial court concluded that the statements were admissible under MRE 803(4) but ruled that Dr. Guertin would not be permitted to opine on whether he believed that the complainant was telling the truth about being sexually assaulted and indicated that "Dr. Guertin also is not going to testify that he has diagnosed her as being the victim of a sexual assault or sexual abuse."

At trial, Dr. Guertin testified about his interview with and examination of the complainant. Dr. Guertin referred to his report of the examination, which contained no official diagnosis. On cross-examination by defense counsel regarding the lack of diagnosis, the following exchange took place:

Q. Now, Doctor, Dr. Guertin, I believe in prior times we've had hearings, and I believe you mentioned that sexual abuse can be a diagnosis.

A. Sexual abuse, physical abuse, child abuse is a diagnosis, a medical diagnosis.

Q. Which causes my next question, is that, in your evaluation, under your Assessment portion of your report, you never diagnose [the complainant] as being a victim of sexual abuse.

A. Well, I feel that the report, pretty much, speaks for itself in that regard. But if you're asking me do I consider to -- her to be a victim, I do.

---

[27] MRE 803(4) creates a hearsay exception for "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."

Q.     Well, you didn't put that in your report, Doctor.

A.     Well, it says:

"She gives a very clear history of being sexually molested between the ages of five and nine. She indicates that the person who did this was a man . . . "

Et cetera.

Q.     Is it -- is it true, Doctor, you did not specifically say, and diagnose her specifically in your report, that she's a victim of sexual abuse?

A.     Right. There's no portion in this assessment where it says diagnosis is sexual abuse, that's true.

On redirect examination immediately after that, the prosecution asked, "Is that your diagnosis?" Dr. Guertin answered, "Yes, it is." On recross-examination, the following exchange took place between defense counsel and Dr. Guertin:

Q.     Dr. Guertin, you didn't say in your report, back when you did the actual assessment or evaluation, that she is diagnosed with -- as a -- as a victim of sexual abuse. Now, five years later, reflecting back, you're saying that's my diagnosis?

A.     Well --

Q.     Do you see where I'm having a problem with that, Doctor?

A.     Actually, I don't. So, I think the report speaks for itself. You can read this report, and you can see what's said in it, you can see what I've pointed out in it. It's true, I do not have a section --

[The Court]: Well --

[The Witness]: -- of the report that says diagnosis of child abuse.

[Defense Counsel]: Well --

[The Witness]: That doesn't mean I can't hold that particular opinion. In fact, I have held that opinion since then.

[Defense Counsel]:

Q.     Well, Doctor --

A.     And I'm now expressing it.

Q.     Dr. Guertin, if this report was then provided to a psychologist or a social worker, they're reading it -- another professional, they're reading it, and they're like where's the diagnosis.

A.     Well, there's not a statement there that say "diagnosis: sexual abuse." If you read this report and read the content of this report and

> what we discussed, in my opinion there would be no question that she's been sexually abused. And I feel that way now, and I felt that way then.

> Q. There's no specific diagnosis victim of sexual abuse. But you never say anything in your report, victim of sexual abuse. Despite a diagnosis, you say nothing in your report that she's a victim of sexual abuse. Now, what's your --

> A. The entire report tends to say that she's a victim of sexual abuse. In fact, it says how it happened. It says the period of years in which it happened, gives the implication of almost how many times it happened. It describes whether or not she was manipulated into not saying anything about it, describes the circumstances of the disclosure. It describes the reasons why we had to test her for venereal disease. It describes whether or not she's protected. It describes whether or not the police are aware of this.

> It is true there's not a line that says "diagnosis: sexual abuse." But if you are asking my opinion, and if you read this, I think it should be clear that this document supports that she was sexually abused. And based on her history to me, I believe that she was.

After Dr. Guertin was excused, the trial court had the jury taken out and raised a concern about Dr. Guertin's testimony on the ground that he had testified that sexual abuse occurred and that he had vouched for the veracity of the victim. Defense counsel moved for a mistrial, arguing that because of his expertise, Dr. Guertin telling the jury that he believed a sexual assault occurred could not be cured by a curative instruction. The prosecution argued that defense counsel opened the door to Dr. Guertin's testimony; although his intent was to impeach Dr. Guertin, the fact that it did not work did not warrant a mistrial. The trial court initially stated that Dr. Guertin "went off on his own" but ultimately found that to some extent defense counsel was the one who opened the door and determined that it would read a limiting instruction to the jury.

The Court of Appeals affirmed defendant's convictions in a split, unpublished opinion. *People v Uribe*, unpublished per curiam opinion of the Court of Appeals, issued January 3, 2019 (Docket No. 338586). Regarding the trial court's denial of a mistrial, the Court of Appeals held that the trial court had not abused its discretion. The Court of Appeals found that defense counsel had, to some extent, opened the door to the contested testimony and further determined that the curative instruction the trial court gave was sufficient. We ordered oral argument on the application on the issue of, *inter alia*, "whether Dr. Guertin's testimony was contrary to this Court's decision in *People v Thorpe*, 504 Mich 230 (2019), and/or *People v Harbison*, 504 Mich 230 (2019)[.]" *People v Uribe*, 505 Mich 1034, 1034 (2020).

## II. ANALYSIS

As we held in *Thorpe*, 504 Mich at 235, "examining physicians cannot testify that a complainant has been sexually assaulted or has been diagnosed with sexual abuse without physical evidence that corroborates the complainant's account of sexual assault or abuse because such testimony vouches for the complainant's veracity and improperly interferes with the role of the jury." In general, this would preclude a physician from providing testimony of the nature that Dr. Guertin provided in this case. Thus, I agree with the majority that Dr. Guertin's testimony was impermissible.

But under the doctrine of invited error, a party cannot seek appellate review of an error that is directly attributable to his or her affirmative conduct. *People v Jones*, 468 Mich 345, 352 n 6 (2003).[28] Thus, a defendant typically may not challenge testimony on appeal that he himself elicited at trial. *People v Haggart*, 142 Mich App 330, 337-338 (1985); cf. *People v Riley*, 465 Mich 442, 448 (2001) (reaching the same conclusion, without using the phrase "invited error," to prevent a defendant from challenging

---

[28] See also *People v Nyx*, 479 Mich 112, 128 n 43 (2007) ("[W]hen a party invites the error, the party waives the right to seek appellate review, and any error is extinguished."); *People v Griffin*, 235 Mich App 27, 46 (1999) (holding that the defendant had waived appellate review of an issue "[b]ecause error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence"), overruled on other grounds in *People v Thompson*, 477 Mich 146 (2007).

The Court of Appeals majority did not use the term "invited error." Rather, it characterized defense counsel's questions as "to some extent 'open[ing] the door' " for Dr. Guertin's response. *Uribe*, unpub op at 11. The phrase "opening the door" has been defined as "[a]n attorney's conduct or questions that render otherwise inadmissible evidence or objectionable questions admissible." *Black's Law Dictionary* (11th ed); see, e.g., *People v Wilder*, 502 Mich 57, 66 (2018) (explaining that evidence of a defendant's other acts is inadmissible under MRE 404(a) unless the defendant had "opened the door by introducing evidence of his good character"). Some have classified "opening the door" as a distinct doctrine, also known as the doctrine of invited response. See, e.g., 1 Arthur & Hunter, Federal Trial Handbook: Criminal (4th ed, December 2020 update), § 28:14. Others consider "opening the door" to be the same as the doctrine of invited error. See, e.g., 29 Am Jur 2d, Evidence (May 2021 update), § 352. We have previously distinguished between invited error and invited response, see *Jones*, 468 Mich at 352, explaining that "[t]he doctrine of invited response is used as an aid in determining whether a prosecutor's improper remarks require the reversal of a defendant's conviction. It is used not to excuse improper comments, but to determine their effect on the trial as a whole," *id*. at 353. Therefore, to be more precise, I use the term "invited error" to refer to defense counsel's questions in this case.

testimony that he elicited at trial).[29]  " '[W]here an answer is clearly responsive to the question asked, it falls within the "invited error" rule, and defendant may not be heard to object, when the answer is unfavorable.' "  *People v Collins*, 63 Mich App 376, 382 (1975) (cleaned up), quoting *State v Maggard*, 104 Ariz 462, 465 (1969).

Any error in Dr. Guertin's testimony during questioning by defense counsel was invited error.  Although the trial court denied defendant's motion in limine and allowed Dr. Guertin to testify about the complainant's statements to him, it specifically precluded Dr. Guertin from opining on whether he believed the complainant was telling the truth or testifying that he had diagnosed her as a victim of sexual assault or sexual abuse.  Yet when Dr. Guertin testified, defense counsel repeatedly questioned him regarding the fact that his report contained no diagnosis, and he did so with knowledge that Dr. Guertin had, in fact, diagnosed the complainant as having been sexually abused, as evidenced by Dr. Guertin's testimony at the earlier hearing on defendant's motion in limine.  In doing so, defense counsel raised the very topic that the trial court had precluded Dr. Guertin from testifying about *at defendant's request*.  It was only after being questioned by defense counsel on this point that Dr. Guertin testified that he thought the complainant had been sexually abused.  Thus, the inadmissible testimony brought out on cross-examination was directly attributable to defendant's affirmative conduct.

As for Dr. Guertin confirming his diagnosis on redirect examination by the prosecution, defense counsel had already opened the door to the topic of Dr. Guertin's diagnosis.  Because defense counsel's questions about a lack of diagnosis had the potential to mislead the jury or create an incomplete picture, it was within the trial court's discretion to allow the prosecution to clarify that point.  See 29 Am Jur 2d, Evidence (May 2021 update), § 352 ("[A] party's use of evidence to create an incomplete or misleading picture opens the door so that the opposing side may, in the court's discretion, use otherwise-inadmissible evidence to complete the picture with appropriate detail.").  Furthermore, on recross-examination, defense counsel merely elicited similar testimony that confirmed Dr. Guertin's diagnosis.

A trial court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion.  See *People v Dennis*, 464 Mich 567, 572 (2001).  "An abuse of discretion

---

[29] See also 24 CJS, Criminal Procedure and Rights of Accused (June 2021 update), § 2548 ("[A] party introducing evidence generally cannot complain on appeal that the evidence has been erroneously admitted."); cf. *People v Zesk*, 309 Mich 129, 131-132 (1944) ("Counsel for defendant claims that there was error in the introduction of certain sworn statements . . . .  These statements undoubtedly had a very damaging effect.  They were introduced, not by the prosecution, but by the attorney for defendant.  He asked that the entire statements be introduced.  No error can be complained of under the circumstances.").

occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274 (2016). Moreover, we have recognized that the "abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269 (2003). In this case, the trial court's decision to deny defendant's motion for a mistrial and instead read the jury a curative instruction was arguably correct—but, at a minimum, it was clearly a reasonable and principled outcome, and thus it was not an abuse of discretion. The majority pays lip service to this standard but fails to properly apply it.

For these reasons, I respectfully dissent from the majority's order and would instead deny leave to appeal.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

August 13, 2021

t0810

Clerk